UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRISCOLL'S INC. and DRISCOLL'S OF EUROPE B.V., <br><br> Plaintiffs, <br><br> v. <br><br> CALIFORNIA BERRY CULTIVARS, LLC and DOUGLAS SHAW, <br><br> Defendants. | No. 2:19-cv-00493-TLN-CKD <br><br><br> **ORDER** |

This matter is before the Court pursuant to Defendants California Berry Cultivars, LLC ("CBC") and Douglas Shaw's ("Shaw") (collectively, "Defendants") Motion to Dismiss and Motion to Strike. (ECF No. 7.) Plaintiffs Driscoll's Inc. and Driscoll's of Europe B.V. (collectively, "Driscoll's"[1]) oppose Defendants' motions. (ECF No. 10.) Defendants have filed a reply. (ECF No. 11.) Having carefully considered the briefing filed by both parties, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss and Motion to Strike. (ECF No. 7.)

///

///

---

[1] The singular "Driscoll's" is how Plaintiffs Driscoll's, Inc. and Driscoll's of Europe B.V. refer to themselves in their Complaint and thus how the Court refers to them in this Order.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Driscoll's is a holder of strawberry patents who allege patent infringement by Defendants. Driscoll's began as the Strawberry Institute of California and received the first patent on a strawberry variety in 1958. (ECF No. 1 at ¶ 5.) Driscoll's continues to breed new berry varieties today, which are grown by independent farmer growers and then sold exclusively by Driscoll's. (*Id.*) Driscoll's uses contracts "to maintain control over its proprietary strawberry varieties," which specify farmers "only have the right to grow the varieties for sale of the fruit by Driscoll's under Driscoll's brand." (*Id.* at ¶ 7.) The contracts "do not permit growers or nurseries to use the varieties for any other purpose, expressly exclude breeding as a permitted purpose, and prevent the growers of nurseries from transferring the varieties to others and from disclosing any proprietary information about the varieties." (*Id.*)

Shaw left the University of California, Davis in 2014 and established CBC, a private strawberry breeding program. (*Id.* at ¶ 8.) In May 2017, a jury in the Northern District of California found Defendants "committed willful patent infringement by using eleven of the [University of California's] patented varieties in CBC's breeding program without the University's permission" and also "engaged in conversion by interfering with the University's property interests in its proprietary strawberry breeding material." (*Id.* at ¶ 9.) Driscoll's alleges witnesses and exhibits revealed during the trial CBC had not only improperly used the University's proprietary strawberry varieties in its breeding program, but also those of Driscoll's and others. (*Id.* at ¶ 10.) Specifically, "at least four Driscoll's patented varieties — Camarillo, Amesti™, Lusa™, and Marquis™ — were used in CBC's breeding program." (*Id.*)

Driscoll's alleges "Shaw prepared CBC's breeding plans and directed the use of Driscoll's proprietary strawberry varieties in these plans" and "CBC or Shaw could not have obtained these varieties except in contravention of Driscoll's agreements with its growers and nurseries." (*Id.*) Driscoll's alleges "Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw have had, and still have, possession of progeny that resulted from unauthorized crossbreeding with Driscoll's proprietary strawberry varieties within this district, including at CBC's French Camp facilities." (*Id.*)

On March 20, 2019, Driscoll's filed the instant action with this Court. (*See generally id.*) Driscoll's seeks declaratory relief, injunctive relief, a constructive trust, damages, restitution, and attorneys' fees. (*Id.* at 13–14.) On June 14, 2019, Defendants filed a motion to dismiss and motion to strike. (ECF No. 7.) On June 25, 2019, Driscoll's filed an opposition (ECF No. 10), and on August 1, 2019, Defendants filed a reply (ECF No. 11).

**II.     STANDARD OF LAW**

     A.     <u>Motion to Dismiss</u>

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

B. <u>Motion to Strike</u>

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court will only consider striking a defense or allegation if it fits within one of these five categories. *Yursik v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal. Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir.

2010)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also* Fed. R. Civ. P. 15(a)(2). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See generally Whittlestone, Inc.*, 618 F.3d at 974–75.

Where a defendant seeks to challenge the sufficiency of factual allegations in a complaint, it must do so through a Rule 12(b)(6) motion, not a Rule 12(f) motion. *Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1146 (E.D. Cal. 2010) (citing *Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1020 (N.D. Cal. 2009)). "[W]here a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated 12(f) motion into a Rule 12(b)(6) motion." *Id.* (citing *Consumer Solutions REO, LLC*, 658 F. Supp. 2d at 1021).

### III. ANALYSIS

The Complaint alleges the following claims: (1) declaratory relief in the form of a judgment from this Court; (2) infringement of U.S. Plant Patent No. 14,771 ("Camarillo"); (3) infringement of U.S. Plant Patent No. 18,878 ("Amesti™"); (4) infringement of U.S. Plant Patent No. 22,247 ("Lusa™"); (5) infringement of U.S. Plant Patent No. 23,400 ("Marquis™"); (6) intentional interference with a contract; (7) conversion; and (8) unfair competition in violation of Cal. Bus. & Prof. Code §§ 17200–17210. (*See* ECF No. 1.) Defendants move to dismiss Claims Two through Seven for failure to state a claim upon which relief may be granted and move to

strike or dismiss Claims One and Eight as "redundant." (*See* ECF No. 7.) The Court will first evaluate the claims Defendants move to dismiss — Claims Two through Five together (as Defendants make overlapping arguments regarding the patent infringement claims), Six, and Seven. The Court will then evaluate the claims Defendants move to strike or dismiss — Claims One and Eight.

### A. Claims Two through Five: Patent Infringement

Driscoll's alleges Defendants "have infringed and continue to infringe" Camarillo, Amesti™, Lusa™, and Marquis™ "in violation of 35 U.S.C. §§ 163 and 271."[2] (ECF No. 1 at ¶¶ 22, 27, 32, 37.) Defendants argue the patent infringement claims fail because the Complaint fails to allege: (1) "the plants at issue were the product of asexual reproduction in the U.S."; (2) direct infringement, as neither "exercising control over [plants]" nor "putting [plants] into service" is "identified as an infringing activity in the patent statutes," nor does the law prohibit those activities from being "carried out abroad"; and (3) indirect infringement, as Driscoll's does not plead acts contributing to infringement or inducement of infringement. (ECF No. 7-1 at 15–18.) Defendants further argue Driscoll's allegations against Shaw fail as a matter of law because "the 'corporate veil' shields a company's officers from personal liability." (*Id.* at 19.)

In opposition, Driscoll's maintains the claim is sufficiently pleaded, as: (1) the plant patent statute prohibits not only asexual reproduction, but also importing, using, offering for sale, or selling the plant or any of its parts; (2) the statute "can reach certain overseas conduct where part of that conduct also has a domestic focus" and Defendants in the U.S. "import[ed] Driscoll's patented varieties 'or part(s) thereof (such as seeds)'"; and (3) Driscoll's claims of Defendants' use of "at least four Driscoll's patented varieties" in its breeding plans and that "Shaw prepared CBC's breeding plans and directed the use of [the patented varieties]" is sufficient to plead

---

[2] Defendants raise the issue of a possible lack of standing, as the patent documents identify a third entity — Driscoll's Strawberry Associates, Inc. — which is not a party to this suit. (ECF No. 7-1 at 7.) At the pleading stage, all reasonable inferences are to be construed in Driscoll's favor. The reasonable inference is that Driscoll's Strawberry Associates, Inc., named as the assignee in the patent documents attached to the Complaint (*see* ECF Nos. 1-1, 1-2, 1-3, 1-4) in support of Driscoll's claims, is related to Driscoll's. Driscoll's must, however, prove ownership of the patents at issue in a future dispositive motion or at trial.

inducement of infringement. (ECF No. 10 at 13–16.) Driscoll's maintains that "[f]or veil piercing to apply, it would be up to Defendants to allege and then to prove that *all* of Shaw's actions relating to Driscoll's claims were conducted in the name of the corporation." (*Id.* at 18.) The Court will first address the elements of the claim and then turn to an evaluation of piercing the corporate veil.

### i. *Elements of the Patent Infringement Claim*

A patent infringement claim requires determination of whether an individual "(1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent." *Cal. Table Grape Comm'n v. RB Sandrini, Inc.*, No. 1:06-cv-00842-OWW-TAG, 2007 WL 1847631, at *17 (E.D. Cal. Jun. 27, 2007) (citing *Van Well Nursery, Inc. v. Mony Life Ins. Co.*, 421 F. Supp. 2d 1321, 1334 (E.D. Wash. 2006)). Plant patent law specifically provides the plant patent "shall include the right to exclude others from asexually reproducing the plant, and from using, offering for sale, or selling the plant so reproduced, or any of its parts, throughout the United States, or from importing the plant so reproduced, or any parts thereof, into the United States." 35 U.S.C. § 163.

With respect to the third element, the patent holder must prove under 35 U.S.C. § 163 "that the alleged infringing plant is an asexual reproduction," meaning it is "the progeny of the patented plant via 'grafting, budding, cuttings, layering, division and the like, but not by seeds.'" *Imazio Nursery, Inc. v. Dania Greenhouses*, 69 F.3d 1560, 1569 (Fed. Cir. 1995) (reversing district court's holding of infringement, as the alleged infringing plant was not an asexual reproduction of the patented plant, but rather an asexual reproduction of a plant with the same essential characteristics as the patented plant); *Cal. Table Grape Comm'n*, 2007 WL 1847631, at *17; *Van Well Nursery, Inc.*, 421 F. Supp. 2d at 1334.

Here, Driscoll's alleges Defendants "actively induce[d] the use, importation, and/or asexual reproduction of" its patented plant varieties — namely, Camarillo, Amesti™, Lusa™, and Marquis™. (ECF No. 1 at ¶¶ 23, 28, 33, 38.) Driscoll's does not provide any further factual allegations to explain how Defendants have produced an infringing plant that is an asexual

7

reproduction of any of its patented plant varieties. As such, the Court finds that Driscoll's has not pleaded "factual content that allows the [C]ourt to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.

Of note, the Court finds the remainder of the elements are adequately pleaded. With respect to the first, second, and fourth elements, Driscoll's alleges Defendants engaged in "unlicensed and unauthorized acts of infringement," which includes: "direct infringement by using, importing, and/or asexually reproducing" its patented varieties or parts thereof; "direct infringement by exercising control over and putting" its patented varieties or parts thereof "into service from within the United States"; causing its patented varieties or parts thereof "to be supplied from the United States in such a manner as to actively induce the use, importation, and/or asexual reproduction of" its patented varieties or parts thereof "with [themselves] or another strawberry variety"; and "indirect infringement by inducing or contributing to the infringement of third parties that used, imported, and/or asexually reproduced" its patented varieties or parts thereof. (ECF No. 1 at ¶¶ 23, 28, 33, 38.) With respect to the fifth element, Driscoll's attached to its Complaint the patent documents for Camarillo, Amesti™, Lusa™, and Marquis™ (*see* ECF Nos. 1-1, 1-2, 1-3, 1-4), which indicate Defendants' alleged actions all occurred during the term of the patents.[3]

## ii. Piercing the Corporate Veil

Defendants note that Driscoll's alleges Shaw "infringed the patents through his actions on behalf of CBC, acting as an employee of CBC, not as an individual." (ECF No. 7-1 at 19 (citing ECF No. 1 at ¶¶ 8–10).) Defendants maintain Driscoll's therefore fails to state a claim against Shaw individually and the corporate veil shields him from liability. (*Id.*) In opposition, Driscoll's maintains it alleges Shaw's conduct began "before the founding of CBC" and "it is unclear whether Shaw currently works for CBC as an employee or simply advises as an outside

---

[3] 35 U.S.C. § 154(a)(2) provides the term of a patent "begin[s] on the date on which the patent issues and end[s] 20 years from the date on which the application for the patent was filed in the United States or, if the application contains a specific reference to an earlier filed application or applications under [§§] 120, 121, 365(c), or 386(c), from the date on which the earliest such application was filed."

8

'member.'" (ECF No. 10 at 18 (citing ECF No. 1 at ¶¶ 4, 8).) Driscoll's contends that even if Shaw did act on behalf of CBC, case law has "recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement." (*Id.*)

"[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986) (citation omitted). "The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement." *Id.* (citing *White v. Mar-Bel, Inc.*, 509 F.2d 287 (5th Cir. 1975); *Rex Chainbelt, Inc. v. General Kinematics Corp.*, 363 F.2d 336 (7th Cir. 1966)); *Fromson v. Citiplate, Inc.*, 886 F.2d 1300, 1304 (Fed. Cir. 1989).

Here, it is unclear from Driscoll's Complaint when CBC was founded. It is therefore difficult to ascertain whether or not Shaw engaged in the allegedly infringing acts prior to CBC's founding. With respect to acts taken after the founding of CBC, Driscoll's does not allege how Shaw "personally took part in the commission" of the alleged patent infringement, or how he "specifically directed other officers, agents, or employees" of CBC to commit the alleged patent infringement. (*See generally* ECF No. 1); *see also Orthokinetics, Inc.*, 806 F.2d at 1579. Driscoll's therefore fails to adequately plead sufficient facts to find Shaw personally liable for patent infringement.

Based on the foregoing, Defendants' Motion to Dismiss Claims Two through Five is GRANTED with leave to amend.

### B. Claim Six: Intentional Interference with a Contract

Driscoll's alleges Defendants, Defendants' members, agents, and/or others acting in concert with Defendants "have intentionally interfered with the contractual relationship between Driscoll's and one or more of its growers or nurseries through acts intended and designed to induce breach and/or disruption of said contractual relationship." (ECF No. 1 at ¶ 44.) Driscoll's alleges Defendants "depriv[ed] Driscoll's of the exclusive benefit from the genetics of its proprietary strawberry varieties and contravening the express terms of the contract." (*Id.*)

Defendants argue Driscoll's claim fails because it is preempted by federal patent law. (ECF No. 7-1 at 20–21.) Defendants also argue Driscoll's fails to adequately state a claim by failing "to allege what 'contracts' even exist" and "whether the contracts are 'at will,' which governs whether [Driscoll's] must also allege whether [Defendants'] supposed 'interference' is 'independently wrongful' beyond the interference itself." (*Id.* at 22–23.) In opposition, Driscoll's asserts patent law does not preempt the claim, as the state claim "includes additional elements not found in the federal [claim]." (ECF No. 10 at 20–21.) Driscoll's also maintains its claim is adequately pleaded — Rule 8 does not require more than what it has pleaded and whether its agreements with its growers and nurseries were "at will" is not an element of the claim. (*Id.* at 21–22.)

The elements of a claim for the tort of intentional inference with a contract include: "(1) a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118 (1990)).

Here, Driscoll's alleges it "has valid express and implied contracts with its growers and nurseries in the United States and abroad." (ECF No. 1 at ¶ 42.) Driscoll's alleges the contracts forbid "(1) the sale or transfer of Driscoll's proprietary strawberry varieties to third parties and (2) their use for any plant breeding purpose not authorized by Driscoll's, including crossbreeding by third parties." (*Id.*) Driscoll's further alleges Defendants "knew or should have known of Driscoll's contractual relationship with its growers and nurseries." (*Id.* at ¶ 43.) There are no facts to show how Defendants knew about Driscoll's contracts or the entities with which Driscoll's entered into contracts. Therefore, Driscoll's cannot and does not plead facts regarding the third element to show how Defendants' acts of interference with such contracts were intentionally designed to induce a breach or disruption. As such, the Court finds here again that Driscoll's has not pleaded "factual content that allows the [C]ourt to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.

Of note, the Court finds the remainder of the elements are also inadequately pleaded. With respect to the first element, Driscoll's does not allege which contracts are at issue — it just plainly alleges Defendants "intentionally interfered with the contractual relationship between Driscoll's and one or more of its growers or nurseries." (ECF No. 1 at ¶ 44.) With respect to the second element, Driscoll's does not allege how Defendants have knowledge of these contracts. Finally, with respect to the fourth and fifth elements, if Driscoll's does not allege which contracts are at issue, it cannot plead how there was an actual breach or disruption of the relationship, or how it was damaged in this process.

Based on the foregoing, Defendants' Motion to Dismiss Claim Six is GRANTED with leave to amend.

### C. Claim Seven: Conversion

Driscoll's alleges Defendants "intentionally and wrongfully exercised control over Driscoll's proprietary strawberry varieties and/or intentionally and substantially interfered with Driscoll's property rights." (ECF No. 1 at ¶ 48.) Defendants argue this claim is preempted by federal patent law and that it is inadequately pleaded. (ECF No. 7-1 at 19–20.) Defendants maintain the claim also fails because Driscoll's cannot state a conversion claim with respect to overseas property and conduct. (*Id.* at 19 (citing ECF No. 1 at ¶¶ 23, 28, 33, 38).)

In opposition, Driscoll's asserts its claim is not preempted because it is based on physical property rights ("the living plants"), not the "alleged misappropriation of patent rights." (ECF No. 10 at 19–20.) Driscoll's also notes that it alleges "significant *domestic* conduct," as "Defendants have 'possession of progeny that resulted from the unauthorized crossbreeding . . .' within the state. . . ." (*Id.* at 20.)

There are three forms of federal preemption: (1) explicit preemption of state law by Congress; (2) field preemption, where the "federal scheme may occupy a given field and thus preempt state law in that field;" and (3) conflict preemption, where "compliance with both state and federal law is impossible" and "the conflicting state law is preempted." *Univ. of Colo. Found., Inc. v. Am. Cyanamid Co.*, 342 F.3d 1298, 1305 (Fed. Cir. 2003). "State law claims that frustrate the objectives embodied in the federal patent scheme are subject to conflict preemption."

*See Gerawan Farming, Inc. v. Rehrig Pac. Co.*, No. 1:11-cv-01273 LJO, 2012 WL 691758, at *7 (E.D. Cal. Mar. 2, 2012) (discussing third form of preemption), *aff'd*, 587 F. App'x 654 (Fed. Cir. 2014). In patent cases, therefore, "federal preemption occurs whenever a state law impermissibly attempts to provide patent-like protection to subject matter addressed by federal patent law." *Id.*

With respect to conversion claims specifically, case law has treated claims "dependent on a determination of patent inventorship or ownership" or "based on alleged misappropriation of patent rights" differently from claims "based on a non-patent theory of conversion." *Id.*; *Gen. Elec. Co. v. Wilkins*, No. 1:10-cv-00674-OWW, 2011 WL 3163348, at *8 (E.D. Cal. Jul. 26, 2011). The former-type claims are generally preempted by patent law, while the latter-type claims are not as long as they "can be established without reference to patent inventorship or ownership." *Gerawan Farming, Inc.*, 2012 WL 691758, at *7; *see also Lyden v. Nike Inc.*, No. 3:13-cv-00662-HZ, 2014 WL 2563401, at *3 (D. Or. Jun. 6, 2014 ) (finding the bases for damages — defendant's rejection of plaintiff's offer to purchase or license his intellectual property and defendant's subsequent patenting of subject matter plaintiff revealed to defendant — identical between the plaintiff's patent infringement claim and conversion claim and the latter therefore preempted); *compare Smith v. Healy*, 744 F. Supp. 2d 1112, 1130 (D. Or. 2010) (finding plaintiffs' conversion claim seeking "damages for the copying and sale of their idea rather than for the sale of the physical device itself," was preempted as it concerned not their "tangible property but rather their intangible idea") *with HIF Bio, Inc. v. Yung Shin Pharms. Indus. Co.*, 600 F.3d 1347, 1355 (Fed. Cir. 2010) (finding a non-patent theory entitles plaintiffs to relief, as they "could establish conversion by reference to defendants' alleged misappropriation of 'experiments, pre-publication experimental data, and nonpublic, pre-publication drafts of papers'").

Here, Driscoll's alleges it "had and continues to have ownership rights and rights to possession of its proprietary strawberry varieties, including intellectual and tangible property rights." (ECF No. 1 at ¶ 47.) Driscoll's alleges Defendants or their "members or agents, and/or others acting in concert with [Defendants] took possession of Driscoll's proprietary strawberry varieties and/or used them for crossbreeding purposes without Driscoll's consent," which

"contravened Driscoll's existing contractual relations on the use of its proprietary strawberry varieties." (*Id.* at ¶ 48.) Driscoll's maintains that it "had a right to possess, and/or maintain ownership of, its proprietary strawberry varieties at the time of Defendants' wrongful exercise of control," which caused "harm to [Driscoll's] contractual relationships and its economic interests." (*Id.* at ¶¶ 48–49.)

In contrast, Driscoll's alleges in its patent infringement claims that Defendants "actively induce[d] the use, importation, and/or asexual reproduction of" its patented varieties and "induc[ed] or contribut[ed] to the infringement of third parties that used, imported, and/or asexually reproduced" its patented varieties. (*Id.* at ¶¶ 23, 28, 33, 38.) The basis for both claims is the same: Driscoll's alleges Defendants either crossbred or asexually reproduced its patented varieties and Defendants impaired Driscoll's contractual relations governing the use of its patented varieties. As Driscoll's conversion claim is "dependent on a determination of patent inventorship or ownership," it is preempted by federal patent law. *Gerawan Farming, Inc.*, 2012 WL 691758, at *7. As the Court finds this claim is preempted, it declines to evaluate the claim on its merits. Accordingly, Defendants' Motion to Dismiss Claim Seven is GRANTED without leave to amend.

### D. Claim Eight: Unfair Competition

Driscoll's alleges Defendants, Defendants' members, agents, and/or others acting in concert with Defendants' use "of Driscoll's proprietary strawberry varieties to further CBC's own breeding program [. . .] constitute[s] unlawful, unfair, and/or deceptive business practices or acts under [Cal. Bus. & Prof. Code §§ 17200–17210]." (ECF No. 1 at ¶ 51.) Defendants argue Driscoll's unfair competition claim is "redundant," "does nothing more than allege that [Defendants'] use of the strawberry varieties in their purported breeding program constitutes unfair competition," and "should be stricken under Rule 12(f) or dismissed." (ECF No. 7-1 at 24.) Defendants note if Driscoll's "is alleging that there is some other activity on the part of [Defendants] that is not encompassed by the patent infringement, conversion, and interference claims, then [Driscoll's] has failed to make sufficient factual allegations to state a claim." (*Id.*) Defendants also maintain that, "to the extent [it] is premised on patent infringement, it is

preempted by federal patent law." (*Id.*)

In opposition, Driscoll's asserts the claim is not redundant because it is required to allege an underlying unlawful, unfair, or deceptive act. (ECF No. 10 at 23.) Driscoll's identifies the unlawful acts as "interference with Driscoll's 'contracts with its growers and nurseries, and conversion of Driscoll's proprietary strawberry varieties.'" (*Id.* (citing ECF No. 1 at ¶ 52).) Driscoll's also notes this claim is not preempted because "it protects interests different from federal patent law." (*Id.* at 24.)

California law prohibits "any unlawful, unfair or fraudulent business act." Cal. Bus. & Prof. Code § 17200. "By proscribing any unlawful business practice, [§] 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal citations and quotations omitted). The "unlawful" practices prohibited by this law include "any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Ct.*, 27 Cal. App. 4th 832, 838–39 (1994) (citing *People v. McKale*, 25 Cal. 3d 626, 632 (1979)).

Here, as noted previously, the unfair competition claim is premised on the intentional interference with a contract and conversion claims. Because the Court finds Driscoll's has failed to adequately plead the underlying claims, the derivative unfair competition claim is inadequately pleaded as well. Accordingly, Defendants' Motion to Dismiss Claim Eight is GRANTED with leave to amend.

E. Claim One: Declaratory Relief

Driscoll's alleges "[a]n actual controversy has arisen and now exists" between themselves and Defendants "as to the use, importation, and benefit from Driscoll's proprietary strawberry varieties and any progeny thereof and the ownership and disposition of any such progeny." (ECF No. 1 at ¶ 19.) Defendants argue this claim is "redundant as it 'consists of allegations that constitute a needless repetition of other averments in the pleading' and should be stricken under Rule 12(f)," or dismissed as duplicative. (ECF No. 7-1 at 24.) In opposition, Driscoll's asserts the claim is not "redundant," nor "duplicative or unnecessary" because the claim "seeks to 'settle

the parties' future rights and obligations.'" (ECF No. 10 at 23.)

"Claims for declaratory relief . . . are ultimately prayers for relief, and not causes of action." *Javaheri v. JP Morgan Chase Bank, N.A.*, No. 2:10-cv-08185-ODW (FFMx), 2012 WL 3426278 at *8 (C.D. Cal. Aug. 13, 2012) (citing *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010)). 28 U.S.C. § 2201 provides, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issues nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington (Washington)*, 759 F.2d 1353, 1357 (9th Cir. 1985) (citations omitted). A claim for declaratory relief is unnecessary where an adequate remedy exists under another cause of action. *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).

Here, Driscoll's patent infringement, intentional interference with a contract, conversion, and unfair competition claims seek redress in the form of an injunction, a constructive trust, damages, restitution, and attorneys' fees and costs (*see* ECF No. 1 at 13–14), while Driscoll's declaratory relief claim seeks a declaration from this Court confirming that:

> (1) unauthorized use (including any breeding program use), importation, and/or propagation (sexual or asexual) of Driscoll's patented varieties or their parts by Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw constitutes patent infringement; (2) Driscoll's is the rightful owner of the intellectual and tangible property rights in its proprietary strawberry varieties and any progeny thereof in the possession of Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw that could not have been created but for the unauthorized use of those varieties; and (3) Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw are not bona fide purchasers (or licensees) for value of Driscoll's proprietary strawberry varieties.

(*Id.* at ¶ 20.) Driscoll's other claims seek an injunction, constructive trust, damages, and restitution to redress current and past wrongs, while Driscoll's declaratory relief claim goes one step further to define the rights and duties of Driscoll's and Defendants. Driscoll's declaratory relief claim seeks a different form of relief from its other claims, and thus the Court cannot conclude the claims are duplicative or redundant. This claim will "serve a useful purpose in

clarifying and settling the legal relations in issues [or] terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Washington*, 759 F.2d at 1357. Accordingly, Defendants' Motion to Strike Claim One is DENIED.

### IV. CONCLUSION

For the aforementioned reasons, the Court hereby GRANTS in part and DENIES in part Defendants' Motion to Dismiss and Motion to Strike (ECF No. 7) as follows:

1. Defendants' Motion to Strike Claim One is DENIED;
2. Defendants' Motion to Dismiss Claims Two through Six and Claim Eight is GRANTED with leave to amend; and
3. Defendants' Motion to Dismiss Claim Seven is GRANTED without leave to amend.

Driscoll's may file an amended complaint consistent with this Court's ruling not more than 30 days from the electronic filing of this Order. Defendants shall file a response to the amended complaint in accordance with the Local Rules and Federal Rules of Civil Procedure.

IT IS SO ORDERED.

DATED: July 1, 2021

Troy L. Nunley
United States District Judge