UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRISCOLL'S, INC., et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>CALIFORNIA BERRY CULTIVARS, LLC, et al.,<br><br>  Defendants. | No.  2:19–cv–00493–TLN–CKD<br><br>ORDER ON MOTION TO STAY DISCOVERY<br><br>(ECF No. 39) |

Presently before the court is defendants' motion for a protective order affirming or reinstating a blanket stay of discovery in this litigation.[1] (ECF No. 39.) The parties filed a joint statement regarding the discovery disagreement, along with supporting declarations and exhibits. (ECF Nos. 39-42.) The court heard remote arguments on the motions on October 20, 2021. (ECF No. 43.) For the following reasons, the court DENIES defendants' motion.

**BACKGROUND**

**A. Legal Background: Plant Patent Law**

Because this motion to stay turns in part on the likelihood of whether defendants will prevail on their pending motion to dismiss (ECF No. 34), a brief discussion of the law pertaining to the merits of that motion is helpful.

---

[1] The matter was referred to the undersigned pursuant to Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

Under the general patent infringement statute, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "A patent infringement claim requires determination of whether an individual (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent." California Table Grape Comm'n v. RB Sandrini, Inc., 2007 WL 1847631, at *17 (E.D. Cal. June 27, 2007).

The Plant Patent Act makes inventions of new and distinct varieties of plants eligible for patent protection like any other invention. See 35 U.S.C. § 161 ("The provisions of this title relating to patents for inventions shall apply to patents for plants, except as otherwise provided."). The Act specifies that plant patent protection "shall include the right to exclude others from asexually reproducing the plant, and from using, offering for sale, or selling the plant so reproduced, or any of its parts, throughout the United States, or from importing the plant so reproduced, or any parts thereof, into the United States." 35 U.S.C. § 163.

"Due to the asexual reproduction prerequisite, plant patents cover a single plant and its asexually reproduced progeny." Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1567 (Fed. Cir. 1995). Therefore, "the patentee must prove that the alleged infringing plant is an asexual reproduction, that is, that it is the progeny of the patented plant." Id. at 1569. The Act's "legislative history defines asexual reproduction as reproduction by 'grafting, budding, cuttings, layering, division, and the like, but not by seeds.'" Id. at 1566 (emphasis in original) (quoting Senate Report).

**B. Factual & Procedural Background**

***1. The Complaint***

In March 2019, plaintiffs Driscoll's, Inc., and Driscoll's of Europe B.V. filed this action for infringement of their strawberry plant patents, conversion, intentional interference with contract, unfair competition, and declaratory judgment. (ECF No. 1.) This lawsuit was inspired by trial exhibit documents made public in a prior patent infringement suit against the present

defendants, California Berry Cultivars, LLC ("CBC") and Dr. Douglas Shaw.[2]  See Regents of the Univ. of Cal. v. Cal. Berry Cultivars, LLC, No. 3:15-cv-02477-VC (N.D. Cal.).  Those documents—which were subject to a protective order, but which were ordered unsealed in 2017 before trial—revealed CBC "breeding plans" showing that CBC was creating new strawberry varieties by crossbreeding from existing varieties, including four of Driscoll's patented varieties (Camarillo, Amesti, Lusa, and Marquis).  (ECF No. 1 ¶¶ 9-10.)  There is also an allegation that "CBC may have used other Driscoll's varieties in its breeding program as well." (Id. ¶ 10; ECF No. 33 ¶ 10.[3])

Driscoll's does not sell its strawberry plants and maintains strict contractual control over its strawberry varieties, requiring any partnering independent farmer growers and nurseries ("suppliers") to enter agreements that "expressly exclude breeding as a permitted purpose, and prevent the growers or nurseries from transferring the varieties to others and from disclosing any proprietary information about the varieties." (ECF No. 1 ¶ 7; ECF No. 33 ¶ 7.)  Driscoll's' original theory for its claims—which continues through to some degree in the amended complaint—was that (1) CBC used at least the four asserted patented strawberry varieties without permission (patent infringement), and (2) in order to do so, CBC must have taken its plants or intellectual property (conversion) and thereby caused one or more suppliers to breach the anti-transferal/non-disclosure provisions of their contracts.

Both the original and amended complaints lead with an identical declaratory relief "cause of action" seeking a declaratory judgment regarding an "actual controversy" between the parties "as to the use, importation, and benefit from Driscoll's proprietary strawberry varieties and any progeny thereof and the ownership and disposition of any such progeny." (ECF No. 1 ¶ 19; ECF No. 33 ¶ 19.)  Specifically, Driscoll's seeks declaratory judgment confirming that

> (1) unauthorized use (including any breeding program use), importation, and/or propagation (sexual or asexual) of Driscoll's

---

[2] Driscoll's is represented in this case by the same counsel who represented the UC system in the prior litigation.

[3] Where the allegations in the original and amended complaints are identical, the court cites both documents by way of background.

> patented varieties or their parts by Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw constitutes patent infringement;
>
> (2) Driscoll's is the rightful owner of the intellectual and tangible property rights in its proprietary strawberry varieties and any progeny thereof in the possession of Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw that could not have been created but for the unauthorized use of those varieties; and
>
> (3) Shaw, CBC, CBC's members or agents, and/or others acting in concert with CBC or Shaw are not bona fide purchasers (or licensees) for value of Driscoll's proprietary strawberry varieties.

(Id. ¶¶ 20 (spacing adjusted).)

In June 2019, CBC responded to the complaint by moving to dismiss and to strike certain claims. (ECF No. 7.) At the close of briefing, on August 2, 2019, the district judge assigned to the case, the Honorable Troy Nunley, took the motion under submission. (ECF No. 12.)

### 2. Prior Discovery Orders

On August 28, 2019, Driscoll's filed with the undersigned a motion to compel various sorts of discovery from defendants. (ECF No. 13.) Among other things, Driscoll's sought responses to requests regarding CBC's use of any of Driscoll's' strawberry varieties, and entry upon CBC's fields to take samples of its strawberry plants for DNA testing. (ECF No. 18.1.)

After a hearing, on October 1, 2019 the undersigned issued an order compelling defendants to allow entry on their fields for sampling at all five requested facilities, and ordering that Driscoll's was permitted to perform DNA extraction and analysis to determine the genetic heritage of all varieties sampled. (ECF No. 22.) However, the undersigned ordered that in all other respects, "Discovery is otherwise stayed until defendants' motion to dismiss (ECF No. 7) is decided." (Id. at 2.)

Soon after this order, the parties entered—and the undersigned approved—a stipulated protective order that permits the designation of items as Confidential, or as Highly Confidential – Attorneys' Eyes Only. (ECF No. 26.)

By October 15, 2019, the parties were back before the undersigned for an informal telephonic discovery conference regarding the field inspections and sampling. (ECF No. 29.) As

relevant, defendants argued that Driscoll's should be permitted to obtain samples but should not be allowed to <u>test</u> them until "a later time, when the scope of Driscoll's claims is determined by the District Court." (ECF No. 28 (Joint Letter) at 3.) Defendants proposed, among other things, that "Driscoll's could be allowed to perform the DNA extraction now, with the DNA samples to be stored in cold storage pending the outcome of the Motion to Dismiss. Frozen DNA samples would also be available for testing for years to come." (Id. at 3-4.)

Following the informal conference, the undersigned issued a minute order stating, as relevant: "Plaintiffs may not conduct microarray analysis of the DNA samples unless and until the discovery stay previously imposed (ECF No. 22) is lifted." (ECF No. 29.) Later that month, Driscoll's indeed conducted the sampling and DNA extraction—but no analysis of the samples—and the samples currently remain in storage at a vendor laboratory. (ECF No. 40 (Joint Statement) at 11; ECF No. 42 (Chivvis Decl.) ¶¶ 3-4.)

### 3. Prior Motion to Dismiss

There was virtually no further activity in the case for almost two years, until July 6, 2021, when Judge Nunley decided the motion to dismiss and to strike. (ECF No. 32.) Judge Nunley granted in part and denied in part the motion: (1) dismissing the conversion claim with prejudice; (2) dismissing with leave to amend the patent infringement claims, the contractual interference claim, and the unfair competition claim; and (3) denying the motion to strike the declaratory judgment claim. (Id.)

Initially, the court acknowledged and rejected as unnecessary to decide at the pleadings stage defendants' passing suggestion that there might be a standing issue because the patent documents attached to the complaint identify a third (non-party) entity—Driscoll's Strawberry Associates, Inc.—as the assignee. (Id. at 6 n.2; see ECF No. 7.1 at 7.)

The court found that Driscoll's adequately pleaded all elements of its Patent Infringement claims, except that the complaint did not provide sufficient factual allegations regarding the "patented invention" element, which for plant patent claims, requires an allegation " 'that the alleged infringing plant is an asexual reproduction,' meaning it is 'the progeny of the patented plant via "grafting, budding, cuttings, layering, division and the like, but not by seeds." ' " (ECF

No. 32 at 7, quoting Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1569 (Fed. Cir. 1995), in turn quoting legislative history.)  The court found insufficient the complaint's flat allegation that defendants "actively induce[d] the use, importation, and/or asexual reproduction of" its patented plant varieties" without "provid[ing] any further factual allegations to explain how Defendants have produced an infringing plant that is an asexual reproduction of any of its patented plant varieties."  (Id. at 7-8.)  However, the court expressly found all remaining elements adequately pleaded.  (Id. at 8.)

By contrast, the court found that Driscoll's failed to plead any of the five elements of a claim for Intentional Interference with a Contract.  (Id. at 10-11.)  As to the third element, the court stated, "There are no facts to show how Defendants knew about Driscoll's contracts or the entities with which Driscoll's entered into contracts."  (Id. at 10.)  As to the first element, "Driscoll's does not allege which contracts are at issue—it just plainly alleges Defendants 'intentionally interfered with the contractual relationship between Driscoll's and one or more of its growers or nurseries.'"  (Id. at 11, quoting ECF No. 1 ¶ 44.)  For the second element, "Driscoll's does not allege how Defendants have knowledge of these contracts."  (Id.)  And the failure to identify the contracts at issue likewise doomed the fourth and fifth elements of "how there was an actual breach or disruption of the relationship, or how it was damaged in this process."  (Id.)

The court dismissed outright Driscoll's' Conversion claim, finding it was preempted by federal patent law.  And the court dismissed the Unfair Competition claim with leave to amend, as derivative of the inadequately pleaded contractual interference claim.  (Id. at 13-14.)

Finally, the court denied defendants' Rule 12(f) motion to strike as redundant the Declaratory Judgment claim.  The court observed that "Driscoll's other claims seek an injunction, constructive trust, damages, and restitution to redress current and past wrongs, while Driscoll's declaratory relief claim goes one step further to define the rights and duties of Driscoll's and Defendants."  (Id. at 15.)  The court held that "Driscoll's declaratory relief claim seeks a different form of relief from its other claims, and thus the Court cannot conclude the claims are duplicative or redundant."  (Id.)  Further, it held "[t]his claim will "serve a useful purpose in clarifying and

settling the legal relations in issues [or] terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties.'" (Id. at 15-16, quoting United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).)

### 4. The Amended Complaint & Pending Motion to Dismiss

On August 5, 2021, Driscoll's filed a First Amended Complaint ("FAC"), as permitted. (ECF No. 33.) The FAC asserts the same causes of action, save the dismissed conversion claim. As relevant to this dispute, the FAC leaves unchanged the first "cause of action" for Declaratory Relief and the last cause of action for Unfair Competition—while adding significantly to the other two sets of claims.

Whereas the original complaint contained a single substantive paragraph describing the infringing acts for each patent claim, the FAC adds to each claim many new paragraphs (and diagrams from the UC litigation documents) describing Driscoll's' theories of infringement:

- that defendants "obtained . . . asexual reproductions by cutting one or more runners from [the patented] Camarillo plants growing on the premises of Driscoll's growers and nurseries";
- that the plants defendants obtained "qualify as asexual reproductions of Camarillo because they are the progeny of Camarillo through an asexual process, such as budding, cuttings, layering, division and the like";
- that defendants "grew and asexually propagated them, again without authorization, by cutting runners, storing those runners, and replanting them on an annual basis";
- defendants "used these asexually reproduced Camarillo plants in their breeding program"; and
- in addition to cutting runners from parent plants, "Defendants also divided other parts of asexually reproduced Camarillo plants for use in their breeding program. Defendants removed the fruit from Camarillo plants, processed the fruit, and/or imported the fruit into the United States for use in their breeding program."

(See, e.g., ECF No. 33 ¶¶ 24, 25.)

////

For the contract interference cause of action, the FAC greatly expands upon the original complaint's previous three paragraphs of substantive allegations. Driscoll's newly quotes at length the relevant provisions of its standard Grower Services Agreement and its Nursery Agreement, used both domestically and abroad, and attaches as exhibits copies of the "template" of the domestic and foreign versions of each type of contract. (Id. ¶¶ 59, 60; ECF Nos. 33.5-33.8 (Exs. 5-8).) Driscoll's alleges that "[e]very grower and nursery in the United States and abroad growing one of Driscoll's proprietary strawberry varieties enters into a contract with Driscoll's that has the same or a substantially similar restrictions as those in the template agreements." (Id. ¶ 61.) The FAC also alleges that Driscoll's' "business practice of providing its proprietary strawberry varieties only pursuant to a contract with its growers and nurseries has been at all relevant times well known in the industry, and Defendants knew of these contractual relationships." (Id. ¶ 63 (further alleging specific knowledge by defendant Shaw and a CBC officer).) The FAC does not, however, identify breach of any specific contract with a specific grower/nursery, simply alleging (as before) that defendants interfered with "the contractual relationship between Driscoll's and one or more of its growers or nurseries." (Id. ¶ 65; see ECF No. 1 ¶ 44.)

Defendants responded by again moving to dismiss all substantive causes of action and to strike the request for declaratory relief. (ECF No. 35.) This time, defendants emphasize their standing challenge to the patent claims—apparently not content with Judge Nunley's rejection of their lighter argument in the last motion. (Id. at 11-12.) Defendants argue that the FAC still does not allege unauthorized asexual reproduction of a patented plant, contending that the generic allegations outlined in bullet-points above "do[] not allege the who, what, when or where of the alleged asexual reproduction." (Id. at 15.) As to the contractual interference claim, defendants argue that the FAC still does not allege any actual contracts or parties to contracts—simply providing "templates"—nor does it allege what defendants supposedly did to interfere with the unidentified contracts. (Id. at 21-22.) And defendants renew their request to strike the declaratory relief claim, framing their argument as a response to Judge Nunley's reasons for previously denying this same motion. (Id. at 23.)

Following the pattern with the first motion to dismiss, on September 24, 2021, it was taken under submission at the close of briefing. (ECF No. 38.) On September 29, 2021, defendants filed the instant motion to stay discovery. (ECF No. 39.)

### C. The Discovery Dispute

In effect, this is the same dispute the undersigned heard two years ago, this time presented by defendants' motion to stay rather than plaintiffs' motion to compel. The differences are that plaintiffs have already been waiting a very long time to move forward with discovery, and there is now a stronger indication of whether this case is likely to move past the pleadings stage—based on Judge Nunley's previous ruling.

Defendants argue that the same motivations for originally granting the stay countenance reaffirming or reimposing the stay now, pending resolution of the second motion to dismiss. Namely, defendants believe they will prevail at the pleadings stage, and defendants do not want Driscoll's to have a "road map" to CBC's trade secret strawberry breeding and selection program by running the DNA analysis on all the collected samples and proceeding with discovery in general.

Plaintiffs argue that continuing or reimposing the stay is unwarranted because they believe their claims will survive the latest motion to dismiss, and the prejudice of waiting to proceed with discovery and make use of the samples they collected two years ago is mounting. Driscoll's agreed to continue to pause discovery, including analyzing the collected DNA samples, until the court could address this dispute. (Joint Statement at 4.)

**DISCUSSION**

### A. Standard for Stay of Discovery

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, among other things, staying discovery or limiting its scope. Fed. R. Civ. P. 26(c)(1). "[T]he Federal Rules of Civil Procedure [do] not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." Mlejnecky v. Olympus Imaging Am., Inc., 2011 WL 489743, at *6 (E.D. Cal. Feb. 7, 2011). "Indeed, district courts look unfavorably upon such blanket stays of

discovery." Id. Accordingly, a motion for a protective order seeking to preclude discovery must be supported by "good cause" and a "strong showing." See Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); Tradebay, LLC v. eBay, Inc., 278 F.R.D. 597, 601 (D. Nev. 2011) ("It is well-established that a party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied.").

A district court has broad discretion to stay discovery pending the resolution of a dispositive motion. Little v. City of Seattle, 863 F.2d 681, 685 (9th Cir. 1988); see also Fed. R. Civ. P. 26(c). A two-pronged test is used to determine whether a protective order should issue staying discovery. Lowery v. F.A.A., 1994 WL 912632, at *3 (E.D. Cal. 1994). First, a pending motion must be potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed. Id. Second, the court must determine whether the pending dispositive motion can be decided absent discovery. See id. "In evaluating a motion to stay, a court inevitably must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." Salazar v. Honest Tea, Inc., 2015 WL 6537813, at *1 (E.D. Cal. Oct. 28, 2015) (cleaned up). This necessitates briefly reviewing the merits of a pending dispositive motion to determine whether a stay should be issued. See Spearman v. I Play, Inc., 2018 WL 1382349, at *2 (E.D. Cal. Mar. 19, 2018). "Staying discovery when a court is convinced that the plaintiff will be unable to state a claim for relief furthers the goal of efficiency for the court and the litigants." Tradebay, 278 F.R.D. at 601 (citing Little, 863 F.2d at 685).

**B. Analysis**

Defendants frame this as a question of whether the stay of discovery ordered two years ago should be "lifted" and discovery "reopened." (Joint Statement at 2.) The October 1, 2019 stay order was clear that discovery was being stayed "until defendants' motion to dismiss (ECF No. 7) is decided." (ECF No. 22.) The October 15th minute order following the informal discovery conference may have introduced some confusion by stating that plaintiffs could not analyze the DNA samples "unless and until the discovery stay previously imposed (ECF No. 22) is lifted." (ECF No. 29.) But the best interpretation of these orders is that the stay automatically

lifted on July 6, 2021 when Judge Nunley decided the motion to dismiss. (ECF No. 32.) Although some of the conversations around imposing the initial stay used language suggesting that the stay should last "until such time as CBC's challenge to the pleadings is fully resolved" (ECF No. 28 (Joint Letter) at 3), that is not the language the court ultimately adopted in its orders. Therefore, the court views this motion from the typical posture of requiring the movant, defendants CBC and Shaw, to show good cause for imposing a stay—not requiring Driscoll's to justify lifting an existing stay.

### 1. *Likelihood of Success on Second Motion to Dismiss*

The first prong of the blanket-stay analysis weighs against defendants' requested stay.[4] Defendants argue that they largely prevailed on their first motion to dismiss, and they are likely to prevail again on this motion. A brief review of the arguments on the pending motion to dismiss, compared to the governing law and the district court's ruling on the prior motion to dismiss, does not leave the undersigned "convinced that [Driscoll's] will be unable to state a claim for relief." Tradebay, 278 F.R.D. at 601.[5]

As to the four patent infringement claims, it appears that the FAC sufficiently states a claim. Like before, the FAC asserts several theories of infringement, and with the benefit of more detailed factual allegations, one or more appear to the undersigned to be adequately pleaded.

The protection of a plant patent includes "the right to exclude others from asexually reproducing the plant, and from using, offering for sale, or selling the plant so reproduced, or any of its parts, throughout the United States, or from importing the plant so reproduced, or any parts thereof, into the United States." 35 U.S.C. § 163 (emphases added). Thus, to plead a claim of

---

[4] The court does not separately discuss the second prong of the stay analysis because further discovery is not needed to resolve the pending motion to dismiss, which turns on the sufficiency of the allegations alone.

[5] It should be noted that this "preliminary peek" into the merits of the allegedly dispositive motion "is not intended to prejudge the outcome of the motion." Zurich Am. Ins. Co. v. Wm. Bolthouse Farms, Inc., 2021 WL 4493532, at *5 (E.D. Cal. Oct. 1, 2021); Tradebay, 278 F.R.D. at 603 (acknowledging that evaluating a pending dispositive motion puts a magistrate judge in an awkward position," because the district judge "may have a different view of the merits of the underlying motion").

plant patent infringement, plaintiffs must allege that defendants "(1) without authority (2) made, used, offered to sell, sold, or imported, (3) an asexual reproduction of [Driscoll's' patented] plant material (4) within the United States (5) during the term of the patent." California Table Grape Comm'n v. RB Sandrini, Inc., 2007 WL 1847631, at *19 (E.D. Cal. June 27, 2007) (cited in ECF No. 32 at 7).

Judge Nunley found that the original complaint adequately pleaded all but the third element. (ECF No. 32 at 7-8.) As he explained, the third element requires the patent holder to assert "that the alleged infringing plant is an asexual reproduction" of the patented plant. (Id. at 7 (quoting Imazio, 69 F.3d at 1569).) The original complaint lumped four theories of infringement together in a single-sentence paragraph (repeated for each of the four patent claims) bearing no specific factual description of defendants' infringing conduct. (See, e.g., ECF No. 1 ¶ 23 (alleging, for instance, "(1) direct infringement by using, importing, and/or asexually reproducing Camarillo, and/or a part thereof (such as its seeds)").) Judge Nunley found such allegations insufficient because they "do[] not provide any further factual allegations to explain how Defendants have produced an infringing plant that is an asexual reproduction of any of its patented plant varieties." (ECF No. 7 at 7-8, emphasis added.) This statement suggests that Driscoll's must allege that defendants themselves asexually reproduced a Driscoll's patented plant in order to have infringed Driscoll's' patents—and defendants seize upon this implication at the discovery hearing and in their renewed motion to dismiss, incorporated by reference in the discovery Joint Statement. (ECF No. 35 at 13-15; ECF No. 40 at 14.) That is not the undersigned's reading of the law, and it is likely that Driscoll's' revamped pleading of its infringement claims will better explain its theory (among others) that defendants' mere "use" of asexually reproduced Driscoll's plants in its crossbreeding program constitutes infringement.

As the district court in the prior UC litigation held in denying CBC's motion for summary judgment,

> unauthorized "use" constitutes a discrete act of infringement. Like the utility patent statute, the Plant Patent Act describes the list of infringing acts in the disjunctive: "using, offering for sale, or selling." 35 U.S.C. § 163 (emphasis added). CBC emphasizes that the Plant Patent Act excludes others from "asexually reproducing the

12

plant, and from using, offering for sale, or selling the plant <u>so reproduced</u>." <u>Id.</u> (emphasis added). But it's clear that this language merely requires UC to prove that the plants CBC was "using" in its breeding activities were asexually reproduced—**not that CBC itself both reproduced and used the plants**.

<u>Regents of the Univ. of Cal. v. Cal. Berry Cultivars, LLC</u>, 2017 WL 9531948, at *6 (N.D. Cal. Apr. 27, 2017) (final, bolded emphasis added). The cases Judge Nunley quoted and relied on acknowledge as much, phrasing the patent holder's burden on the third element in a passive voice as needing to show "that the infringing plant is an asexual reproduction of the patented plant," <u>RB Sandrini</u>, 2007 WL 1847631, at *17; <u>Imazio</u>, 69 F.3d at 1569, not that the alleged infringer performed the asexual reproduction.

Cases interpreting the general Patent Act—which also lists infringing acts in the disjunctive, <u>see</u> 35 U.S.C. § 271(a) ("makes, uses, offers to sell, or sells"), and which also governs infringement of plant patents, <u>see</u> 35 U.S.C. § 161—hold that "unauthorized use, without more, constitutes infringement." <u>Aro Mfg. Co. v. Convertible Top Replacement Co.</u>, 377 U.S. 476, 484 (1964).

"The ordinary meaning of 'use' is 'to put into action or service.'" <u>Med. Sols., Inc. v. C Change Surgical LLC</u>, 541 F.3d 1136, 1141 (Fed. Cir. 2008) (quoting dictionary definition). "The inquiry as to what constitutes a 'use' of a patented item is highly case-specific." <u>Id.</u> (holding that display and demonstration of patented system at trade show did not constitute infringing "use"). The undersigned will not analyze in detail whether the FAC adequately alleges an infringing "use" of an asexual reproduction of one of Driscoll's' patented plants but notes that the FAC contains several new paragraphs spelling out how defendants obtained Driscoll's' plants without authorization and "used . . . asexually reproduced [patented] plants in their breeding program" by crossbreeding them. (<u>See, e.g.</u>, ECF No. 33 ¶¶ 10, 24; <u>id.</u> at 8 (2015 breeding diagram).) CBC is "a private strawberry breeding company" (ECF No. 33 ¶ 8), which "researches and develops new and better strawberries" (ECF No. 35 at 7). Other cases, including those cited by Judge Nunley, have found similar conduct to constitute infringing "use." <u>See RB Sandrini</u>, 2007 WL 1847631, at *19-20 (concluding that defendant's tending and harvesting of grape vines—which DNA testing conclusively established were "the asexually propagated

progeny of the first [patented] plant"—to produce grapes for market, "constitute a 'use' within the meaning of the Patent Act"). Driscoll's' brief in opposition to the motion to dismiss emphasizes this newly fleshed-out unauthorized "use" theory of infringement. (ECF No. 36 at 13-14.)

Aside from better explaining plaintiffs' unauthorized "use" theory of infringement, the FAC also, in addition, now includes the requested "further factual allegations" that defendants themselves did in fact reproduce Driscoll's' patented varieties by "asexually propagate[ing] them" by (1) "cutting runners, storing those runners, and replanting them on an annual basis," and (2) "divid[ing] other parts of asexually reproduced" Driscoll's plants by removing the fruit from the plants and processing it. (See, e.g., ECF No. 33 ¶¶ 24, 25.) Replanting cuttings from a patented plant qualifies as asexually reproducing that plant. See Imazio, 69 F.3d at 1566 (stating that Plant Patent Act's "legislative history defines asexual reproduction as reproduction by 'grafting, budding, cuttings, layering, division, and the like, but not by seeds'" (emphasis relocated) (quoting Senate Report)). Although the FAC contains no specifics as to where or when these cuttings took place, these appear to be more than simply conclusory "defendant harmed me" allegations sufficient to put defendants on notice of the infringement claims against them.[6] Because Driscoll's only became aware of the good faith basis for these infringement claims through CBC internal breeding documents revealed in prior litigation, it makes sense that Driscoll's would not be able to say—at this stage—exactly how CBC obtained its patented plant varieties for use in its crossbreeding program.[7]

Thus, it is likely that plaintiffs will be able to plead that defendants either "asexually reproduce[ed]" their patented plants, or "use[d] . . . the plant so reproduced" (or both), in satisfaction of 35 U.S.C. §§ 163 and 271. Because Judge Nunley found that to be the one missing

---

[6] Moreover, because mere unauthorized use within the patent term of an asexually reproduced patented plant (however obtained) qualifies as infringement regardless of where or when the reproduction occurred, as explained above, the undersigned sees no defect in the failure to allege time and location details.

[7] The undersigned also finds it unlikely that defendants' patent ownership/standing argument will fare better before Judge Nunley on the pending motion. Although defendants make this argument more vociferously than before, Judge Nunley's previous rejection of their argument appears equally applicable now. (See ECF No. 32 at 6 n.2.)

element of the patent infringement claims, the undersigned believes it more likely that the FAC will now be found to adequately plead these four patent causes of action.

The outcome of the contractual interference claim is more difficult to divine. Judge Nunley's order on the motion to dismiss recited that the elements of a claim for the tort of intentional inference with a contract include: "(1) a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (ECF No. 32 at 10 (quotation omitted).)  As defendants point out, the FAC still does not seem to allege exactly "which contracts are at issue," or "how Defendants knew about Driscoll's contracts or the entities with which Driscoll's entered into contracts." (ECF No. 32 at 10-11.)  However, the FAC does provide much more detail about the types of contracts at issue and the types of provisions they contained; and again, plaintiffs' position is that they do not (yet) know from whom CBC obtained their patented varieties—but because it was not from them, it must have come from some unauthorized source in violation of the standard non-transferal/non-disclosure provisions. Because the patent infringement claims are likely to survive the pleadings stage in any event, the undersigned declines to opine on the fate of this claim—or its derivative claim for unfair competition.

Finally, the undersigned can fairly confidently project that plaintiffs' declaratory judgment claim will, again, not be stricken as redundant. Judge Nunley rejected defendants' arguments for striking this claim in the last motion (ECF No. 32 at 15-16), and the FAC retains the identical wording in this "cause of action" from the original complaint. The undersigned sees no reason to expect that Judge Nunley will reconsider his prior decision—although, as the declaratory relief claim is not truly its own "cause of action," it would fail if he determines that no substantive claim has been adequately pleaded.

With the benefit of the district judge's prior ruling and plaintiffs' additional allegations in the FAC, the undersigned cannot confidently say that this action is likely to be entirely dismissed at the pleadings stage.

////

### 2. *Prejudice to Driscoll's from Further Stay*

On the other side of the scale, while there is some possibility that CBC will prevail on the instant motion to dismiss and have the case dismissed outright, the harms from delaying discovery (potentially for another year or more) have become starker than when the court last granted a stay.

First, the sheer amount of time—almost exactly two years, by now—that has passed with discovery completely stayed is prejudicial. Although no firm case deadlines exist—only case-contingent deadlines (ECF No. 3)—years of waiting to investigate one's claims can only mean increasing difficulties with proof.

The fact that DNA testing is a key part of proving plaintiffs' claims, including their likely well-pleaded infringement claims, makes continuing delays all the more concerning. See RB Sandrini, 2007 WL 1847631, at *19 (noting that "DNA testing conclusively establishe[d]" the grape vines at issue were "the asexually propagated progeny of the first [patented] plant"). Without getting into the science of exactly how long biological samples of plant DNA can be stored "on ice" without deteriorating beyond the point of accurate analysis, the prejudice is clear. The longer the extracted DNA samples remain unanalyzed in storage, the greater the risk of damage, loss, or simple deterioration. The parties undertook great time and expense to arrange the CBC fields inspection, collection, and DNA extraction—costing more than $100,000 according to plaintiffs' counsel. Given the likelihood that plaintiffs will proceed further with their case, the court declines to add any further to the risk that these prior efforts might go to waste.[8]

On this point, were Driscoll's to have to re-collect physical samples, there is a possibility that the plants sampled would be one or more generations removed from the plants originally sampled two years ago—making it harder than before to trace the DNA trail back to whatever point at which Driscoll's' patented varieties may have been introduced in CBC's crossbreeding.

---

[8] The court also notes plaintiffs' counsel's representation that simply running the DNA analysis will, itself, take "multiple months," further extending the waiting period beyond that necessary to decide the second motion to dismiss.

16

Defendants argue that the presence of "crossbreeding" allegations undermines plaintiffs' infringement claims by showing that the real conduct at issue is CBC's <u>sexual</u> reproduction of plants, that is, its crossbreeding. As explained in the analysis of the infringement claims above, however, Driscoll's is at least in part challenging the simple <u>use</u> of asexually produced clones of its plants in CBC's commercial endeavors. That those commercial endeavors involve crossbreeding Driscoll's' plants with other varieties (through sexual reproduction) does not—in the undersigned's view—preclude Driscoll's from invoking patent protection for the unauthorized "use" of its asexually reproduced variety.[9] Thus, this risk further adds to the prejudice of delaying the analysis of the already collected samples.

Accordingly, the court declines to reimpose a blanket stay of discovery in this case. The court notes that the stipulated protective order now in place will prevent plaintiffs themselves (or defendants, as the case may be) from viewing discovery properly designated as for Attorneys' Eyes Only.[10]

### C. Consideration of Possible Lesser Protective Orders

The court is sensitive to defendants' desire to protect their trade secret strawberry breeding and selection practices from discovery by their direct competitor in the industry; and it is less clear whether Driscoll's will survive the pleadings stage with claims that make relevant and proportional discovery regarding <u>all</u> of CBC's strawberry varieties, as opposed to just those varieties derived from a Driscoll's patented plant. However, at the hearing, it became clear that the nature of DNA tracing would make unworkable a limited or partially-blind analysis of the CBC samples collected. Accordingly, Driscoll's may now proceed with a full DNA analysis of

---

[9] Driscoll's helpfully clarifies in its opposition to the motion to dismiss that it "is not alleging that any derivative plants bred through sexual reproduction infringe its patents" but rather that "<u>but for</u> Defendants' infringement with asexual reproductions" of the plants, "Defendants would not have been able to create any such derivative plants." (ECF No. 36 at 13-14 & 13 n.3.)

[10] Of course, the interest in transparent judicial decisions could warrant public disclosure down the line of parts of relevant discovery materials covered by the protective order—as it apparently did in the prior UC litigation. Concerns over such potential future disclosure will be addressed when such disclosure is actually requested, and do not persuade the court to prevent initial discovery.

the material extracted from the CBC samples, subject only to the terms of the stipulated protective order.

With discovery now open generally, the court remains available to review more limited requests for protection that defendants might find necessary to raise in response to certain of plaintiffs' discovery requests.[11]  The court simply finds a blanket stay of discovery altogether is no longer warranted.

**CONCLUSION**

For these reasons, IT IS ORDERED THAT defendants' motion to stay discovery (ECF No. 39) is DENIED.  The parties may proceed with discovery in general; and plaintiffs in particular may proceed with full DNA analysis of the samples previously collected, subject to the terms of the parties' stipulated protective order.

Dated:  October 21, 2021

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

19.dris.0493

---

[11] The court encourages the parties to continue to use the undersigned's informal discovery resolution procedures for disputes that do not require extensive briefing.