1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  DRISCOLL'S INC. and DRISCOLL'S OF
    EUROPE B.V.,
12                                              No. 2:19-cv-00493-TLN-CKD

13               Plaintiffs,

14        v.                                    **ORDER**

15  CALIFORNIA BERRY CULTIVARS,
    LLC and DOUGLAS SHAW,
16
                 Defendants,
17

18        This matter is before the Court on Defendants California Berry Cultivars, LLC ("CBC")

19  and Douglas Shaw's ("Shaw") (collectively, "Defendants") Motion to Dismiss.  (ECF No. 60.)

20  Plaintiff's Driscoll's Inc. and Driscoll's of Europe B.V. (collectively, "Driscoll's"[1]) filed an

21  opposition.  (ECF No. 61.)  Defendants filed a reply.  (ECF No. 63.)  For the reasons set forth

22  below, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.  (ECF No. 60.)

23  ///

24  ///

25  ///

26

27  _____

    [1]      The singular "Driscoll's" is how Plaintiffs Driscoll's Inc. and Driscoll's of Europe B.V.
    refer to themselves in their Second Amended Complaint ("SAC") and the Court refers to them the
28  same here.

                                                1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Driscoll's holds various strawberry patents and alleges Defendants infringed on several of these patents.  Driscoll's began as the Strawberry Institute of California and received the first patent on a strawberry variety in 1958.  (ECF No. 59 at ¶ 5.)  Driscoll's continues to breed new berry varieties today, which are grown by independent farmer growers and then sold exclusively by Driscoll's.  (*Id.*)  Driscoll's uses contracts "to maintain control over its proprietary strawberry varieties."  (*Id.* at ¶ 7.)  The contracts specify farmers "only have the right to grow the varieties for sale of the fruit by Driscoll's under Driscoll's brand."  (*Id.*)  The contracts also "do not permit growers or nurseries to use the varieties for any other purpose, expressly exclude breeding as a permitted purpose, and prevent the growers of nurseries from transferring the varieties to others and from disclosing any proprietary information about the varieties."  (*Id.*)

Shaw, the former head of the University of California, Davis strawberry breeding program, left the University in 2014 and established CBC, a private strawberry breeding program. (*Id.* at ¶ 8.)  In 2016, the Regents of the University of California brought suit against CBC regarding CBC's right to use the patented and unpatented strawberry varieties Shaw developed during his time at the University.  *Regents of the Univ. of Cal. v. Cal. Berry Cultivars*, LLC, No. 16-CV-02477-VC, 2017 WL 9531948 (N.D. Cal. Apr. 27, 2017).  In May 2017, a jury found Defendants "committed willful patent infringement by using eleven of the [University of California's] patented varieties in CBC's breeding program without the University's permission" and also "engaged in conversion by interfering with the University's property interests in its proprietary strawberry breeding material."  (ECF 59 at ¶ 9.)  Driscoll's alleges witnesses and exhibits offered during trial in *Regents* revealed that CBC not only improperly used the University's proprietary strawberry varieties in its breeding program, but also those of Driscoll's and others.  (*Id.* at ¶ 10.)  Specifically, "at least four Driscoll's patented varieties — Camarillo[™], Amesti™, Lusa™, and Marquis™ — were used in CBC's breeding program." (*Id.*)

///

///

1    In the instant case, Driscoll's alleges "Shaw prepared CBC's breeding plans and directed
2    the use of Driscoll's proprietary strawberry varieties in these plans." (*Id.*)  In other words,
3    Driscoll's alleges Shaw unlawfully used Driscoll's patented strawberry varieties in their breeding
4    plans.  (*Id.*)  Driscoll further alleges "CBC or Shaw could not have obtained these varieties except
5    in contravention of Driscoll's agreements with its growers and nurseries." (*Id.*)  Specifically,
6    Driscoll's alleges "Shaw, CBC, CBC's members or agents, and/or others acting in concert with
7    CBC or Shaw have had, and still have, possession of progeny that resulted from unauthorized
8    crossbreeding with Driscoll's proprietary strawberry varieties within this district, including at
9    CBC's French Camp facilities." (*Id.*)  Driscoll does not allege how or where CBC or Shaw
10   obtained these patented strawberry varieties.

11   On March 29, 2019, Driscoll's filed the instant action with this Court.  (ECF No. 1.)  On
12   July 6, 2021, this Court granted in part and denied in part Defendants' first motion to dismiss the
13   Complaint.  (ECF No. 32.)  On August 5, 2021, Driscoll's filed the First Amended Complaint.
14   (ECF No. 33.)  On March 29, 2022, this Court granted in part and denied in part Defendants'
15   second motion to dismiss the First Amended Complaint.  (ECF No. 58.)  On April 29, 2022,
16   Driscoll's filed the operative SAC.  (ECF No. 59.)  Driscoll's seeks declaratory relief, injunctive
17   relief, a constructive trust, damages, restitution, and attorneys' fees.  (*Id.* at 22–23.)  On May 20,
18   2022, Defendants filed the operative third motion to dismiss.  (ECF No. 60.)  On June 3, 2022,
19   Driscoll's filed an opposition (ECF No. 60), and on June 13, 2022, Defendants filed a reply.
20   (ECF No. 63.)

21   **II.    STANDARD OF LAW**

22   A.    Motion to Dismiss

23   A motion to dismiss for failure to state a claim upon which relief can be granted under
24   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.
25   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain
26   "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.
27   Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in
28   federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim. *Adams v. Johnson*, 355, F.3d 1179, 1183 (9th Cir. 2004) (citations omitted). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680. While the plausibility requirement is not akin to a probability requirement, it demands more

than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility

inquiry is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or

her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly

dismissed. *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits

thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

*See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

*Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998); *see also Daniels-*

*Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (the court need not accept as true

allegations that contradict matters properly subject to judicial notice).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading

could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995));

*see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

denying leave to amend when amendment would be futile).  Although a district court should

freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

deny such leave is 'particularly broad' where the plaintiff has previously amended its

complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir.

2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**III.   ANALYSIS**

The SAC alleges the following claims: (1) declaratory relief in the form of a judgment

from this Court; (2) infringement of U.S. Plant Patent No. 18,878 ("Amnesti"); (3) infringement

of U.S. Plant Patent No. 22,247 ("Lusa"); (4) infringement of U.S. Plant Patent No. 23,400

("Marquis"); (5) intentional interference with a contract; and (6) unfair competition in violation of

Cal. Bus. & Prof. Code §§17200–17210.  (*See* ECF No. 59).  Defendants move to dismiss Claims

Five and Six pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be

1    granted.  (*See* ECF No. 60.)  The Court reviews each claim in turn.

2                          A.      Claim 5: Intentional Interference with a Contract

3             Driscoll's alleges it has "valid express contracts with each and every one of its growers

4    and nurseries in the United States and abroad."  (ECF No. 59 ¶ 48.)  Driscoll's claims its

5    contracts forbid "(1) the sale or transfer of Driscoll's propriety strawberry varieties to third parties

6    and (2) their use for any plant breeding purpose not authorized by Driscoll's, including

7    crossbreeding by third parties."  (*Id.*)  Driscoll's further alleges eight nurseries propagated, and 54

8    growers received, Amesti™, Lusa™, and Marquis™ varieties since 2012.  (*Id.* at ¶¶ 53, 62.)

9    Driscoll's alleges its contracts with the eight nurseries contains provisions stating Driscoll's

10   retains ownership to the plants and "prohibits the nursery from giving away, selling, lending,

11   handing over, or otherwise disposing of any of the plants."  (*Id.* at ¶ 53.)  Further, Driscoll's

12   alleges 54 growers received Amesti™, Lusa™, and Marquis™ solely to produce fruit for

13   Driscoll's and that all such growers had their own contracts with Driscoll's.  (*Id.* at ¶ 62.)

14   Driscoll's alleges the grower contracts also include provisions prohibiting the grower "from

15   cross-breeding the plants . . . or permitting a third party to do so."  (*Id.* at ¶ 64.)

16            Driscoll's argues it adequately alleged the elements of its tortious interference claim.

17   (ECF No. 61 at 5.)  Driscoll's identifies "each and every nursery and grower in Spain that was

18   authorized to possess" the plant varieties at issue since 2012.  (*Id.*)  Further, Driscoll's alleges it

19   had exclusivity provisions in contracts with each of the identified nurseries and growers.  (*Id.* at

20   5–6.)  Driscoll's argues Defendants' possession of the plant varieties indicates they must have

21   been improperly acquired resulting in a breach of one or more of these contracts or disruption of

22   the contractual relationship(s).  (*Id.* at 6.)

23            Defendants argue Driscoll's does not adequately allege multiple elements of this claim,

24   and therefore the Court should grant their motion to dismiss.  (ECF No. 60-1 at 5.)  Specifically,

25   Defendants emphasize Driscoll's does not identify a valid contract, but rather "continues to rely

26   on template agreements.  (*Id.* at 6.)  Defendants assert Driscoll's simply identified a "pool of at

27   least five (and potentially more) alleged agreements" by naming nurseries and growers but does

28   not identify the actual contract or contracts allegedly interfered with within that pool.  (*Id.*)  As a

1    result, Defendants argue they cannot adequately defend against this claim because Driscoll's has

2    failed to identify an actual contract that was allegedly interfered with.  (*Id.*)

3        The elements of a claim for the tort of intentional interference with a contract include: "(1)

4    a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract;

5    (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

6    relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

7    damage." *United Nat. Maint., v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir.

8    2014) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1119 (1990)).

9        The Court previously found Driscoll's did not adequately plead the first, fourth, and fifth

10   elements because Driscoll's failed to allege which contract(s) were at issue and failed to allege

11   there was an actual breach or disruption of the relationship.  (ECF No. 58 at 12.)  The Court finds

12   Driscoll's alterations to the SAC have not remedied these issues.  As a result, and for the reasons

13   outlined below, the Court finds Driscoll's has failed to plead sufficient facts as to elements one,

14   three, four, and five of this claim.[2]

15        With respect to the first element, Driscoll's still fails to allege which contracts are at

16   issue—it simply alleges Defendants "intentionally interfered with the contractual relationship

17   between Driscoll's and one or more of its growers or nurseries."  (ECF No. 59 ¶ 67.)   While

18   Driscoll's has specified the eight nurseries that propagate, and the 54 growers that receive,

19   Amesti™, Lusa™, and Marquis™, it still fails to allege the existence of a specific contract or

20   contracts serving as the basis for its allegations.  (*Id.*)  Driscoll's simply specifies 62 potential

21   parties that may have had a contractual obligation to Driscoll's without indicating the specific

22

23  [2]      The Court acknowledges that Driscoll's has likely pleaded sufficient facts as to the second
element.  Driscoll's alleges that Shaw interacted with the California Strawberry Commission and
24   acknowledged the contractual requirements Driscoll's places on its growers and nurseries.  (*Id.* at
¶ 65.)  Driscoll's also alleges "a CBC officer publicly acknowledged that acquiring Driscoll's
25   proprietary strawberry requires a contract with Driscoll's."  (*Id.*)  These facts demonstrate
Defendants' general knowledge about Driscoll's business practice of contracting with growers
26   and nurseries.  If Driscoll's could plead the specific contract at issue in this case, there appears
sufficient factual allegations to establish that Defendants would have had knowledge of that
27   contract.  Driscoll's, however, would still have to overcome the seemingly insurmountable legal
barrier of pleading an intentional act.
28

1  contract or party.  (*Id.*)  (claiming "[defendants] have intentionally interfered with the contractual

2  relationship between Driscoll's and *one or more* of its growers *or* nurseries") (emphasis added).

3         While there are cases where a plaintiff can establish the existence of a valid contract

4  without alleging the specific parties to a contract, this is not one of those cases.  In *Blizzard*

5  *Entertainment, Inc. v. Ceiling Fan Software, LLC*, ("*Blizzard*") plaintiff alleged it had valid

6  contracts with all of its users because all users must agree to both a user license agreement and

7  the terms of use to access its product.  28 F. Supp. 3d 1006, 1011 (2013).  The players assent to

8  these two contracts by clicking a button in a dialog box indicating the user's agreement to the

9  terms.  *Id.* n.3.  This is a standard clickwrap agreement, and therefore, the terms of the agreement

10  do not vary from user to user and the user must accept the terms to access the product.  Thus,

11  everyone who is accessing the product must have accepted the exact same agreement.

12         The instant case is much different.  Here, Driscoll's contracts, unlike the contracts in

13  *Blizzard* are not mirror image clickwrap contracts with the only key difference being the

14  contracting party.  Instead, Driscoll's alleges two types of contracts — nursery contracts and

15  grower contracts — that are different in form and substance.  Even more, Driscoll's

16  acknowledges that among any given contract for both nurseries and growers, there may be some

17  individual differences.  (*See* ECF No. 59 at ¶¶ 54–61) (claiming that year to year the contracts are

18  "substantially comparable," suggesting the contracts are not the same).  Additionally, Driscoll's

19  provides only a template grower contract and does not provide any actual grower contracts.

20  Therefore, Driscoll's again fails to allege a specific contract at issue.  Accordingly, the first

21  element is not adequately pleaded.

22         Turning to element three, the Court finds Plaintiff fails to plead Defendants engaged in an

23  intentional act designed to induce a breach or disruption of a contractual relationship.  While an

24  actor's primary purpose need not be disruption of the contract, the interference must be "known

25  to [defendant] to be a necessary consequence of his action."  *Quelimane Co. v. Stewart Title*

26  *Guar. Co.*, 19 Cal. 4th 26, 56, (1998).  Here, Driscoll's fails to allege any acts Defendants

27  undertook to induce any of the 62 nurseries or growers to breach their contracts with Driscoll's.

28  Driscoll's simply alleges Defendants somehow acquired various plant varieties without alleging

any facts as to how.  (EFC No. 59 ¶ 66.)  Instead, Driscoll's alleges that Defendants' mere

possession of its patented plant varieties is evidence that Defendants induced a party to breach a

contract because every contract has an exclusivity clause.  (*Id.*)  Driscoll's reasoning misses a

step.  While Defendants' possession is certainly in contravention of any exclusivity contract

Driscoll's has with their nurseries and growers, it alone does not demonstrate an act of intentional

interference with their contracts.  Driscoll's must plead factual allegations regarding Defendants'

acts that induced the breach of the specific contract.  Driscoll's fails to do that here.  Accordingly,

element three is not adequately pleaded.  *See Celebrity Chefs Tour, LLC v. Macy's Inc.*, 16 F.

Supp. 3d 1141, 1157 (2014) (granting Macy's motion to dismiss plaintiff's claim for tortious

interference with a contract because plaintiffs failed to identify defendant's acts.)

Because Driscoll's fails to allege sufficient facts as to elements one and three, it

necessarily follows that Driscoll's fails to plead an actual breach or disruption of the contractual

relationship.  (*See id.* at ¶¶ 66–67.)  Without a contract at issue and without a breach, Driscoll's

cannot plead damages.  Accordingly, Driscoll's fails to allege sufficient facts as to elements four

and five.

Accordingly, Defendants' Motion to Dismiss Claim Five is GRANTED with leave to

amend.  While the Court has doubts as to Driscoll's ability to plead a viable tortious interference

with a contract claim, the Court will give Plaintiff a final opportunity to amend.  The Court,

however, cautions Driscoll's that any amended complaint must adequately address the

deficiencies set forth above.

### B.  Claim 6: Unfair Competition

Driscoll's alleges Defendants have engaged in a variety of unlawful, unfair, or fraudulent

practices including infringement of Driscoll's plant patent, interference with its growers and

nurseries, and the unlawful acquisition of Driscoll's proprietary strawberry varieties.  (*Id.* at ¶ 72.)

However, Defendants contend that because the underlying intentional interference with a contract

claim fails, this claim fails too.  (ECF No. 60-1 at 8.)

California law prohibits "any unlawful, unfair or fraudulent business act."  Cal. Bus. &

Prof. Code § 17200.  "By proscribing any unlawful business practice, [§] 17200 borrows

1    violations of other laws and treats them as unlawful practices that the unfair competition law

2    makes independently actionable." *Cal-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th

3    163, 180 (1999) (internal citations and quotations omitted).  The "unlawful" practices prohibited

4    by this law include "any practices forbidden by law, be it civil or criminal, federal, state, or

5    municipal, statutory, regulatory, or court-made." *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832,

6    838–39 (1994) (citing *People v. McKale*, 25 Cal. 3d 626, 632 (1979)).

7         In the Court's two previous orders, the unfair competition claim was dismissed because it

8    was premised on the failed intentional interference with a contract claim.  (ECF No. 32 at 14;

9    ECF No. 58 at 14.)  Here, the same issue persists.  Because the Court finds Driscoll's has failed to

10   adequately plead the underlying intentional interference with a contract claim, the derivative

11   unfair competition claim cannot proceed.  Accordingly, Defendants' Motion to Dismiss Claim

12   Six is GRANTED with leave to amend.

13        **IV.  CONCLUSION**

14        For the foregoing reasons, the Court hereby GRANTS Defendants Motion to Dismiss

15   Claim Five and Claim Six.  (ECF No. 60.)  Driscoll's may file an amended complaint within

16   thirty (30) days of the electronic filing date of this Order.  Defendants' responsive pleading is due

17   within twenty-one (21) days of the electronic filing date of Driscoll's amended complaint.  If

18   Plaintiff opts not to file an amended complaint the case will proceed on the remaining claims in

19   the SAC (Claims One, Two, Three, and Four) and Defendant shall file an answer not later than

20   twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

21        IT IS SO ORDERED.

22   **DATED: March 29, 2023**

23

24                                   Troy L. Nunley
                                     United States District Judge
25

26

27

28

                                   10