1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                             EASTERN DISTRICT OF CALIFORNIA

10

11   DRISCOLL'S, INC., and DRISCOLL'S           No. 2:19-cv-00493-TLN-CKD
     OF EUROPE B.V.,
12
                    Plaintiffs,
13                                               **ORDER**
           v.
14
     CALIFORNIA BERRY CULTIVARS,
15   LLC, and DOUGLAS SHAW,

16                  Defendants.

17

18          This matter is before the Court on Plaintiffs Driscoll's, Inc. and Driscoll's of Europe

19   B.V.'s (collectively, "Driscoll's"[1]) Motion for Leave to Amend.  (ECF No. 96.)  Defendants

20   California Berry Cultivars, LLC ("CBC") and Douglas Shaw ("Shaw") (collectively,

21   "Defendants") filed an opposition.  (ECF No. 106.)  Driscoll's filed a reply.  (ECF No. 111.)  For

22   the reasons set forth below, the Court DENIES Driscoll's motion.

23   ///

24   ///

25   ///

26

27   [1]      The singular "Driscoll's" is how Plaintiffs Driscoll's, Inc. and Driscoll's of Europe B.V.
     refer to themselves in the Second Amended Complaint, and the Court refers to them the same
28   here.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Driscoll's holds various strawberry patents and alleges Defendants infringed on several of these patents.  Driscoll's began as the Strawberry Institute of California and received the first patent on a strawberry variety in 1958.  (ECF No. 59 at ¶ 5.)  Driscoll's continues to breed new berry varieties today, which are grown by independent farmer growers and then sold exclusively by Driscoll's.  (*Id.*)  Driscoll's uses contracts "to maintain control over its proprietary strawberry varieties."  (*Id.* at ¶ 7.)  The contracts specify farmers "only have the right to grow the varieties for sale of the fruit by Driscoll's under Driscoll's brand."  (*Id.*)  The contracts also "do not permit growers or nurseries to use the varieties for any other purpose, expressly exclude breeding as a permitted purpose, and prevent the growers of nurseries from transferring the varieties to others and from disclosing any proprietary information about the varieties."  (*Id.*)

Shaw, the former head of the University of California, Davis (the "University") strawberry breeding program, left the University in 2014 and established CBC, a private strawberry breeding program.  (*Id.* at ¶ 8.)  In 2016, the Regents of the University sued CBC regarding CBC's right to use the patented and unpatented strawberry varieties Shaw developed during his time at the University.  *Regents of the Univ. of Cal. v. Cal. Berry Cultivars, LLC*, No. 16-CV-02477-VC, 2017 WL 9531948 (N.D. Cal. Apr. 27, 2017).  In May 2017, a jury found Defendants "committed willful patent infringement by using eleven of the [University's] patented varieties in CBC's breeding program without the University's permission" and also "engaged in conversion by interfering with the University's property interests in its proprietary strawberry breeding material."  (ECF No. 59 at ¶ 9.)  Driscoll's alleges evidence from the trial in *Regents* revealed that CBC not only improperly used the University's proprietary strawberry varieties in its breeding program, but also those of Driscoll's and others.  (*Id.* at ¶ 10.)  Specifically, "at least four Driscoll's patented varieties — Camarillo[™], Amesti™, Lusa™, and Marquis™ — were used in CBC's breeding program."  (*Id.*)

In the instant case, Driscoll's alleges "Shaw prepared CBC's breeding plans and directed the use of Driscoll's proprietary strawberry varieties in these plans."  (*Id.*)  In other words, Driscoll's alleges Shaw unlawfully used Driscoll's patented strawberry varieties in CBC's

1    breeding plans.  (*Id.*)  Driscoll's further alleges "CBC or Shaw could not have obtained these

2    varieties except in contravention of Driscoll's agreements with its growers and nurseries."  (*Id.*)

3    Specifically, Driscoll's alleges "Shaw, CBC, CBC's members or agents, and/or others acting in

4    concert with CBC or Shaw have had, and still have, possession of progeny that resulted from

5    unauthorized crossbreeding with Driscoll's proprietary strawberry varieties within this district,

6    including at CBC's French Camp facilities."  (*Id.*)  Driscoll's does not allege how or where CBC

7    or Shaw obtained these patented strawberry varieties.

8         On March 29, 2019, Driscoll's initiated the instant action.  (ECF No. 1.)  On April 29,

9    2022, Driscoll's filed the operative Second Amended Complaint ("SAC"), alleging the following

10   claims: (1) declaratory relief in the form of a judgment from this Court; (2) infringement of U.S.

11   Plant Patent No. 18,878 ("Amnesti™"); (3) infringement of U.S. Plant Patent No. 22,247

12   ("Lusa™"); (4) infringement of U.S. Plant Patent No. 23,400 ("Marquis™"); (5) intentional

13   interference with a contract; and (6) unfair competition in violation of Cal. Bus. & Prof. Code §§

14   17200–17210.  (ECF No. 59.)  On March 30, 2023, the Court granted Defendants' motion to

15   dismiss the intentional interference with contract and unfair competition claims with leave to

16   amend.  (ECF No. 77.)  Driscoll's opted not to file an amended complaint, and the case proceeded

17   on the remaining claims in the SAC.  Defendants filed answers with counterclaims on May 19,

18   2023, and Driscoll's answered the counterclaims on June 28, 2023.  (ECF Nos. 78–81.)

19   Driscoll's filed the instant motion for leave to amend the SAC on April 22, 2024.  (ECF No. 96.)

20        **II.    STANDARD OF LAW**

21        Granting or denying leave to amend a complaint rests in the sound discretion of the trial

22   court.  *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996).  When the Court issues a

23   scheduling order that establishes a timetable to amend the complaint, Federal Rule of Civil

24   Procedure ("Rule") 16 governs any amendments to the complaint.  *Coleman v. Quaker Oats Co.*,

25   232 F.3d 1271, 1294 (9th Cir. 2000).  To allow for amendment under Rule 16, a plaintiff must

26   show good cause for not having amended the complaint before the time specified in the

27   scheduling order.  *Id.*  The good cause standard primarily considers the diligence of the party

28   seeking the amendment.  *Johnson v. Mammoth Recs., Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

1    Even if the good cause standard is met under Rule 16, the Court has the discretion to

2  refuse amendment if it finds reasons to deny leave to amend under Rule 15(a). *Johnson*, 975 F.2d

3  at 610.  Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's

4  written consent or the court's leave," and the "court should freely give leave when justice so

5  requires."  The Ninth Circuit has considered five factors in determining whether leave to amend

6  should be given: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of

7  amendment; and (5) whether plaintiff has previously amended his complaint." *In re W. States*

8  *Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 738 (9th Cir. 2013) (citation omitted).

9    **III.    ANALYSIS**

10    Driscoll's seeks leave to allege additional facts to support its intentional interference with

11  contract and unfair competition claims, which have been dismissed three times.  (ECF No. 96-1 at

12  6.)  The Court dismissed the unfair competition claim because it was derivative of the intentional

13  interference with contract claim.  (ECF No. 77 at 10.)  As such, the Court only addresses the

14  intentional interference with contract claim in this Order.

15    The elements of a claim for the tort of intentional interference with a contract include: "(1)

16  a valid contract between a plaintiff and a third party; (2) defendant's knowledge of this contract;

17  (3) defendant's intentional acts designed to induce a breach or disruption of the contractual

18  relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting

19  damage." *United Nat. Maint., v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir.

20  2014) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1119 (1990)).

21    In an order dated March 30, 2023, the Court dismissed Driscoll's intentional interference

22  with contract claim for the third time because Driscoll's failed to plead sufficient facts as to the

23  first, third, fourth, and fifth elements of the claim.  (ECF No. 77 at 7–9.)  As to the first element,

24  the Court concluded Driscoll's failed to allege which specific contract was at issue.  (*Id.* at 7–8.)

25  The Court found Driscoll's broad allegations about 62 potential parties (eight nurseries and 54

26  growers) that may have had a contractual obligation to Driscoll's was insufficient.  (*Id.*)  As to the

27  third element, the Court concluded Driscoll's failed to allege intentional acts Defendants took to

28  induce a breach or disruption of the contract.  (*Id.* at 8–9.)  The Court rejected Driscoll's

4

argument that Defendants' alleged possession of Driscoll's patented plant varieties, without more, was sufficient to establish that Defendants intentionally interfered with any particular contract. (*Id.*)  Based on Driscoll's failure to plead the first or third elements of the claim, the Court found Driscoll's also failed to plead the fourth or fifth elements.  (*Id.* at 9.)  The Court granted Driscoll's thirty days to file an amended complaint.  (*Id.* at 10.)  Driscoll's did not file an amended complaint during that time, and the case proceeded on the remaining claims in the SAC.

Driscoll's filed the instant motion for leave to amend on April 22, 2024 — a year after its deadline for amending the complaint.  (ECF No. 96.)  Driscoll's argues there is good cause to amend because key facts came to light during depositions of Shaw and two other CBC personnel, Lucky Westwood ("Westwood") and Kyle VandenLangenberg ("VandenLangenberg"), which took place between March 27 and April 4, 2024.[2]  (ECF No. 96-1 at 9–12.)

Driscoll's cite the following facts it claims it learned from Shaw's March 28, 2024, deposition:

1. Viveros California is Driscoll's contract nursery in Seville, Spain;

2. Viveros California had possession of the same Driscoll's varieties as CBC's germplasm list in 2015, including Amesti™, Lusa™, and Marquis™;

3. Shaw asked David Garcia Sinova, a Eurosemillas employee, to obtain Driscoll's varieties listed in CBC's germplasm list for use in CBC's breeding program;

4. Eurosemillas' crossing facility at the time it acquired Driscoll's materials was "in a small town, maybe 20 miles east of Seville," and Eurosemillas maintained a business relationship with Viveros California as a licensor for strawberry plants;

5. Shaw personally assigned CBC germplasm numbers to Driscoll's varieties, and Driscoll's varieties were used to create crosses for CBC; and

6. Eurosemillas, at CBC's direction, imported seeds of crosses of Driscoll's varieties into the United States for use in CBC's breeding program.

---

[2]    Driscoll's motion redacted the deposition excerpts.  However, Driscoll's subsequently stated the parties "no longer pursue sealing of the documents originally sought to be sealed in connection with Driscoll's opening Motion for Leave to Amend."  (ECF No. 131 at 3.)

Driscoll's cite the following facts it claims it learned from Westwood's April 4, 2024, deposition:

1.  Eurosemillas made strawberry crosses at Shaw's direction;

2.  Eurosemillas performed activities at CBC's request to get germplasm into CBC's control, and that CBC's germplasm collection in California was a result of the activities that Shaw requested that Eurosemillas perform;

3.  Driscoll's has an "exclusive proprietary program," and Driscoll's plants are not available for purchase in California; and

4.  Westwood could point to no evidence documenting Eurosemillas' acquisition of Driscoll's Amesti™, Lusa™, and Marquis™ varieties.

Driscoll's cite the following facts it claims it learned from VandenLangenberg's March 27, 2024, deposition:

1.  CBC had germplasm list containing Driscoll's patented strawberry varieties, specifically including Marquis™ and Amesti™;

2.  CBC requested Eurosemillas to make certain crosses using some of the varieties on CBC's germplasm list; and

3.  VandenLangenberg did not recall any documentation from Eurosemillas' acquisition of crossing materials.

(ECF No. 96-1 at 9–12.)

As to its diligence in seeking leave to amend, Driscoll's argues it promptly provided notice of the proposed amendments to Defendants and filed the instant motion thereafter.  (*Id.*) Driscoll's also contends Defendants have resisted Driscoll's diligent efforts to obtain discovery regarding Defendants' unlawful acquisition and use of Driscoll's varieties.  (*Id.* at 13.)  More specifically, Driscoll's argues it moved to compel discovery on these issues and Defendants only produced 283 pages in the years 2019 to 2023.  (*Id.*)

In opposition, Defendants raise four main arguments.  First, Defendants address each purportedly new fact in turn and argue those facts were available to Driscoll's based on Defendants' answers to interrogatories served on February 17, 2022, and/or based on information

1    presented at the 2017 trial between CBC and the University.  (ECF No. 106 at 12–20.)  Second,

2    Defendants argue the purportedly new facts are insufficient to state a claim.  (*Id.*)  Third,

3    Defendants argue Driscoll's was not diligent in seeking leave to amend.  (*Id.* at 20–21.)  For

4    example, Defendants argue the magistrate judge denied Driscoll's motion to compel discovery in

5    2022 on the grounds that Defendants did not possess the documents Driscoll's sought.  (*Id.*)

6    Defendant further argue the magistrate judge explained that Driscoll's discovery should have

7    been directed to the entities in Spain who would have control over the information sought, yet

8    Driscoll's never tried to pursue the information from those entities.  (*Id.*)  Fourth, Defendants

9    argue granting leave to amend would cause severe prejudice to Defendants as it would require the

10   Court to reopen fact and expert discovery on issues that have nothing to do with the remaining

11   patent infringement claims.  (*Id.* at 21–24.)

12          In reply, Driscoll's asserts "[i]t is true Driscoll's already knew much about Defendants'

13   interference . . . [but] the Court wanted more specifics."  (ECF No. 111 at 6.)  Driscoll's argues

14   "[b]efore CBC produced a 'CBC germplasm list' this year, what Driscoll's did not know is that

15   Defendants had obtained not three, *but five*, Driscoll's varieties, Amesti™, Lusa™, Marquis™,

16   Camarillo™, and Magdalena™, in 2015 without Driscoll's authorization."  (*Id.* (emphasis in

17   original).)  Driscoll's argues it did not know of the "CBC germplasm list" or that all five varieties

18   corresponded with those Driscoll's had contracted with Viveros California to propagate until

19   Defendants first provided the list on February 6, 2024.  (*Id.* at 7.)  Driscoll's contends Shaw's

20   deposition confirmed that Eurosemillas had a longstanding relationship with Viveros California

21   and that Viveros California had possession of the same Driscoll's varieties on the CBC

22   germplasm list.  (*Id.* at 9–12.)  Driscoll's argues this provided the "crucial link" that allowed it to

23   ascertain for the first time that Defendants interfered with the Viveros California contract.  (*Id.*)

24          Defendants object to Driscoll's reply.  (ECF No. 112.)  Defendants contend Driscoll's

25   improperly included new evidence and argument in the reply related to the documents produced

26   February 6, 2024.  (*Id.* at 2.)  Defendants argue none of those documents were filed with or cited

27   in Driscoll's opening brief, and Defendants had no opportunity to address them in their

28   opposition.  (*Id.*)

Driscoll's fails to persuade the Court that it has been diligent. This case has been pending since March 2019. (ECF No. 1.) Since that time, the Court has dismissed the intentional inference of contract and unfair competition claims three times. (ECF No. 32; ECF No. 58; ECF No. 77.) The most recent dismissal took place on March 30, 2023. (ECF No. 77.) Although the Court granted leave to amend, Driscoll's chose not to file an amended complaint. Moreover, discovery has been open since October 22, 2021. (ECF No. 44.) Driscoll's fails to adequately explain why it did not bolster the intentional inference of contract and unfair competition claims sooner, especially considering that much of the "new" information appears to have been available to Driscoll's for years. Indeed, Defendants persuasively argue Driscoll's knew or should have known of the facts it seeks to allege based on information presented at the 2017 trial or at least based on interrogatory responses provided in February 2022. For example, Defendants correctly points out that Driscoll's previously alleged "Viveros California is a contract nursery based in Seville, Spain" and "Viveros California had a contract with Driscoll's of Europe B.V. to propagate Amesti™, Lusa™, and Marquis™." (ECF No. 59 at 17.) Further, in Defendants' supplemental response to interrogatories from 2022, it indicated "CBC has grown for evaluation certain new strawberry varieties it received from International Semillas, LLC."[3] (ECF No. 106-3 at 10–11.) Defendants also indicated Shaw was one of the individuals involved in developing the 2015, 2016, and 2017 crossing plans and "CBC is informed and believes that all of the crossing to create the New Varieties was performed outside the United States, specifically in Spain, in a town near Seville." (*Id.*)

Driscoll's fails to adequately respond to Defendants' very detailed arguments about what Driscoll's knew or should have known based on the 2017 trial and/or 2022 interrogatory responses. Driscoll's also fails to adequately explain why, based on the available information, it did not depose witnesses until the end of the discovery deadline and did not pursue discovery from the relevant third-party entities directly. Rather than provide adequate responses on those points, Driscoll's improperly presents new evidence and argument in its reply that it could have

---

[3] The parties use the terms "International Semillas" and "Eurosemillas" interchangeably.

presented in its original motion.  In its motion, Driscoll's focused solely on information purportedly learned during the Shaw, Westwood, and VandenLangenberg depositions.  (ECF No. 96-1 at 6, 9–11.)  In its reply, Driscoll's argues for the first time that documents produced February 6, 2024, revealed that Viveros California was the nursery from which Defendants obtained the Driscoll's varieties and that Defendants knew they did not have authorization to obtain the varieties.  (ECF No. 129 at 226.)  Driscoll's fails to explain why those documents are not mentioned in the original motion.  Driscoll's failure to raise the argument sooner has deprived Defendants of the opportunity to respond, and the Court declines to consider arguments about the documents produced on February 6, 2024.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

Accordingly, the Court finds Driscoll's was not diligent and has not met the good cause standard under Rule 16.

**IV.    CONCLUSION**

For the foregoing reasons, the Court DENIES Driscoll's Motion for Leave to Amend. (ECF No. 96.)

IT IS SO ORDERED.

Date:  February 19, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE