UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DRISCOLL'S, INC., and DRISCOLL'S OF EUROPE B.V., | No. 2:19-cv-00493-TLN-CKD |
| Plaintiffs, | |
| v. | **ORDER** |
| CALIFORNIA BERRY CULTIVARS, LLC, and DOUGLAS SHAW, | |
| Defendants. | |

This matter is before the Court on Defendants California Berry Cultivars, LLC ("CBC") and Douglas Shaw's ("Shaw") (collectively, "Defendants") Motion for Summary Judgment. (ECF No. 138.) Plaintiffs Driscoll's, Inc. and Driscoll's of Europe B.V.'s (collectively, "Driscoll's"[1]) filed an opposition. (ECF No. 143.) Defendants filed a reply. (ECF No. 147.) For the reasons set forth below, the Court GRANTS Defendants' motion.

///

///

///

---

[1]     The singular "Driscoll's" is how Plaintiffs Driscoll's, Inc. and Driscoll's of Europe B.V. refer to themselves in the Second Amended Complaint, and the Court refers to them the same here.

1    **I.      FACTUAL AND PROCEDURAL BACKGROUND**[2]

2        Driscoll's holds various strawberry patents and alleges Defendants infringed on several of

3    those patents.  (ECF No. 59.)  At the outset, the parties do not dispute the following fundamentals

4    of strawberry reproduction and breeding.  Strawberry plants can reproduce both asexually and

5    sexually.  (ECF No. 146-2 at 2.)  Cultivated strawberries are typically reproduced asexually by

6    allowing the plants to produce offshoots called "runners."  (*Id.*)  The runners produce their own

7    crown and root systems and become new "daughter" plants that are genetically identical to the

8    plant they came from, called the "mother" plant.  (*Id.*)

9        In contrast, sexual reproduction, or crossbreeding, produces genetically new and distinct

10   progeny through the combination of the genetics of the two parent plants.  (*Id.*)  Strawberry seeds

11   are the product of sexual reproduction.  (*Id.* at 3.)  In sexual reproduction of strawberries, pollen

12   from the male part of one strawberry plant flower fertilizes the female part of another strawberry

13   plant flower.  (*Id.*)  Each parent plant has both male and female parts, meaning neither is "male"

14   or "female," but the plant donating the pollen is typically referred to as the "father" or paternal

15   parent, while the plant that is fertilized and on which the seeds develop is typically referred to as

16   the "mother" or maternal parent.  (*Id.*)  In any given cross between two strawberry varieties,

17   either plant can serve as the paternal or maternal plant, but it is convention in the field to

18   designate which plant serves as the male parent and which plant serves as the female parent.  (*Id.*)

19   A successful cross results in production of numerous seeds, all of which share the same parents,

20   and each of which is a genetically distinct "sibling" to the other seeds.  (*Id.* at 4.)  The collection

21   of sexually reproduced progeny from a cross between two parent plants is referred to as a

22   "family."  (*Id.*)  Individual progeny within the family that are selected for further development are

23   called "selections."  (*Id.* at 5.)  Each selection germinates from a single seed.  (*Id.*)

24       The instant case involves the alleged infringement of three of Driscoll's patents (the

25   "Patented Plants"): (1) PP 18,878; (2) PP 22,247; (3) and PP 23,400.  (*Id.* at 5–6.)  The '878

26   patent is directed to the Amesti variety of strawberry.  (*Id.* at 6.)  The '247 patent is directed to the

27

28   [2]      The following facts are undisputed unless otherwise noted.

1    Lusa variety of strawberry.  (*Id.*)  The '400 patent is directed to the Marquis variety of strawberry.

2    (*Id.*)  Each of the Patented Plants is a single selection from a cross between two other varieties,

3    and the asexual, i.e., genetically identical, reproductions of that plant.  (*Id.*)

4          CBC seeks to identify promising selections from its crosses, patent them, and eventually

5    license them to strawberry growers around the world.  (*Id.* at 11.)  From 2014 to 2017, the first-

6    generation progeny of CBC's breeding program came from crosses carried out in Spain based on

7    crossing plans that CBC created.  (*Id.*)  The crossing plans specifically identified Amesti, Lusa,

8    and Marquis and directed that crosses be performed with those varieties.  (*Id.* at 11–12.)  CBC

9    transmitted the 2015, 2016, and 2017 crossing plans to International Semillas, LLC/Eurosemillas[3]

10    personnel located in Spain to perform the crosses in Spain.  (*Id.* at 12.)  Eurosemillas harvested

11    the seeds resulting from the crosses and shipped the seeds to the United States and Canada.  (*Id.*

12    at 18.)  The seeds were germinated into seedlings and planted.[4]  (*Id.*)

13          On March 29, 2019, Driscoll's initiated the instant action.  (ECF No. 1.)  On April 29,

14    2022, Driscoll's filed the operative Second Amended Complaint ("SAC"), alleging the following

15    claims: (1) declaratory relief in the form of a judgment from this Court; (2) infringement of U.S.

16    Plant Patent No. 18,878 ("Amesti"); (3) infringement of U.S. Plant Patent No. 22,247 ("Lusa");

17    and (4) infringement of U.S. Plant Patent No. 23,400 ("Marquis").[5]  (ECF No. 59.)  Defendants

18    filed answers with counterclaims against Driscoll's.  (ECF Nos. 78, 79.)  Defendants filed the

19    instant motion for summary judgment on August 21, 2024.  (ECF No. 138.)

20    

21    [3]    The parties refer to Eurosemillas and International Semillas interchangeably, and it
22    appears both names refer to the same entity.  (ECF No. 146-2 at 13.)  The Court will refer to this
      entity as Eurosemillas throughout this Order.

23    [4]    Driscoll's purports to dispute certain facts presented in this section.  (ECF No. 146-2 at 2–
24    18.)  However, Driscoll's does not present evidence refuting these facts.  Rather, Driscoll's
      provides additional facts to support arguments raised in its motion.  As such, the Court finds there
25    is no material dispute as to these facts, which are included to provide general background
      information.  The Court will discuss additional facts related to the parties' arguments below.

26    [5]    The Court previously dismissed Driscoll's intentional interference with a contract claim
27    and unfair competition claim with leave to amend.  (ECF No. 77.)  Driscoll's opted not to file an
      amended complaint within the given deadline, and the Court denied Driscoll's subsequent motion
28    to amend filed a year later.  (ECF No. 148.)

1  **II.     STANDARD OF LAW**

2  Summary judgment is appropriate when the moving party demonstrates no genuine issue

3  of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

4  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

5  judgment practice, the moving party always bears the initial responsibility of informing the

6  district court of the basis of its motion, and identifying those portions of "the pleadings,

7  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

8  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.

9  Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

10  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

11  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

12  324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a

13  party who does not make a showing sufficient to establish the existence of an element essential to

14  that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

15  If the moving party meets its initial responsibility, the burden then shifts to the opposing

16  party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus.

17  Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.

18  Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute,

19  the opposing party may not rely upon the denials of its pleadings, but is required to tender

20  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

21  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

22  demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

23  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

24  the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

25  the nonmoving party.  *Id.* at 251–52.

26  In the endeavor to establish the existence of a factual dispute, the opposing party need not

27  establish a material issue of fact conclusively in its favor.  *First Nat'l Bank of Ariz.*, 391 U.S. at

28  288–89.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to

1    resolve the parties' differing versions of the truth at trial." *Id.* Thus, the "purpose of summary

2    judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3    genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e)

4    advisory committee's note on 1963 amendments).

5        In resolving the summary judgment motion, the court examines the pleadings, depositions,

6    answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed.

7    R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence

8    of the opposing party is to be believed and all reasonable inferences that may be drawn from the

9    facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.

10   at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

11   obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*

12   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

13   1987). To demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do

14   more than simply show that there is some metaphysical doubt as to the material facts."

15   *Matsushita Elec.*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational

16   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

17      **III.  ANALYSIS**

18       Driscoll's patent infringement claims are brought pursuant to 35 U.S.C. §§ 271 and 163.

19   (ECF No. 59 at 7–12.) Section 271 provides, "Except as otherwise provided in this title, whoever

20   without authority makes, uses, offers to sell, or sells any patented invention, within the United

21   States or imports into the United States any patented invention during the term of the patent

22   therefor, infringes the patent." 35 U.S.C. § 271(a). Section 163, the Plant Patent Act, states, "In

23   the case of a plant patent, the grant shall include the right to exclude others from asexually

24   reproducing the plant, and from using, offering for sale, or selling the plant so reproduced, or any

25   of its parts, throughout the United States, or from importing the plant so reproduced, or any parts

26   thereof, into the United States." 35 U.S.C. § 163.

27       Driscoll's seeks to hold Defendants liable for two distinct types of infringing conduct: (1)

28   the crossbreeding that took place in Spain with the use of Patented Plants; and (2) the importation

                                        5

1    and use of seeds in the United States that had been grown on Patented Plants in Spain.[6]  (*See* ECF

2    No. 59.)  Defendants move for summary judgment as to all of Driscoll's remaining claims.  (ECF

3    No. 140 at 9.)  Specifically, Defendants argue they are entitled to summary judgment on Claims

4    One through Four because Driscoll's cannot produce sufficient evidence that Defendants

5    infringed any of the patents at issue.[7]  (*Id.*)  Defendants argue: (1) there is no evidence that

6    Defendants asexually reproduced any of the Patented Plants; (2) a seed that grows on an asexually

7    reproduced plant is not "part" of a plant within the meaning of the Plant Patent Act; (3) there is no

8    evidence that Defendants imported or used seeds in the United States that had been grown on a

9    Patented Plant because Driscoll's cannot establish a Patented Plant served as the maternal plant in

10    any given cross; and (4) Defendants cannot be liable for conduct that took place in Spain.  (ECF

11    No. 140 at 14–15.)  As will be discussed, the Court finds the Defendants' third and fourth

12    arguments to be dispositive.  Therefore, the Court need not and does not address Defendants' first

13    two arguments.  The Court will address Defendants' third and fourth arguments in turn.

14                        A.    Importation and Use of Seeds in the United States

15            Based on the arguments before the Court, it appears that Driscoll's theory of infringement

16    for Defendants' importation and use of seeds in the United States requires Driscoll's to prove by a

17    preponderance of the evidence that Defendants imported and/or used seeds in the United States

18    _____

19    [6]       Driscoll's gives the Court no reason to believe there is any other basis for liability.  In the
20    statement of undisputed facts, Driscoll's asserts "[g]enetic evidence establishes that progeny of
      Driscoll's patented plants from these crosses were present in California in 2019, which is at least
21    circumstantial evidence that the crosses were performed in the United States."  (ECF No. 146-2 at
      14.)  Driscoll's does not raise this argument in its opposition brief.  The Court also notes
22    Driscoll's fails to cite any other evidence that could support a reasonable inference that
      crossbreeding occurred in the United States.  Therefore, the Court concludes Driscoll's fails to
23    properly raise this argument, and the Court declines to address it.

24    [7]       Defendants argue in the absence of patent infringement, Driscoll's is not entitled to any of
      the declaratory relief it seeks in Claim One.  (ECF No. 140 at 9.)  In opposition, Driscoll's agrees
25    that its declaratory relief claim is tied to its allegations of infringement.  (ECF No. 146-1 at 19.)

26            Defendants alternatively move for partial summary judgment on the issue of damages.
27    (*Id.*)  As will be discussed, the Court agrees with Defendants that Driscoll's fails to raise a
      genuine issue of material fact as to infringement.  Accordingly, the Court need not and does not
28    address Defendants' alternative argument regarding damages.

1    that had been grown on a Patented Plant.  This would require Driscoll's to establish that a

2    Patented Plant was used as the maternal plant in a cross and that Defendants imported and/or used

3    seeds from such a cross in the United States.

4       Defendants contend Driscoll's cannot prove that Patented Plants were used as maternal

5    plants in the crosses performed in Spain or that Defendants imported and/or used seeds resulting

6    from such a cross in the United States.  (ECF No. 140 at 27–28.)  Defendants argue CBC's

7    crossing plans from 2015 and 2016 do not specify which member of any cross was to be the

8    maternal and paternal parent, nor is there evidence of how Eurosemillas executed the crosses

9    those years.  (*Id.* at 27 (citing ECF No. 138-3 at 47–53 (2015 and 2016 crossing plans)).)

10   Defendants argue although CBC's 2017 crossing plan does identify maternal and parental parents,

11   it is undisputed those seeds were shipped to Canada.  (*Id.* at n.5 (citing ECF No. 138-1 at 3

12   (VandenLangenberg stating Eurosemillas shipped the seeds from 2017 crosses to Canada, he

13   germinated the seeds in Canada in July 2017, and he brought germinated seedlings to California

14   in August 2017)).)  Defendants also cite deposition testimony from Driscoll's strawberry breeding

15   expert, David Small, who indicated that specifying which plants are maternal or paternal plants in

16   a strawberry cross has no material effect on the outcome of the cross.  (*Id.* at 28 (citing ECF No.

17   138-3 at 16).)  Lastly, Defendants acknowledge CBC's 2016 crossing plan lists a single cross,

18   116.013, between two Patented Plants (Marquis and Lusa), but Defendants argue the genetic

19   parentage analysis from Driscoll's expert, Dr. Stephen Dellaporta, confirms that 116.013 did not

20   proceed according to plan and was actually a cross between Marquis and a non-Driscoll's variety.

21   (*Id.* at n.6 (citing ECF No. 140 at 44–47).)  Defendants emphasize that Dr. Dellaporta testified his

22   methodology has "never made a mistake."  (*Id.* (citing ECF No. 138-3 at 25 (stating "our

23   algorithm is extremely accurate . . . we're able to identify every single parent of thousands and

24   thousands of samples" and the algorithm "never made a mistake")).)

25      In opposition, Driscoll's asserts there is sufficient evidence to raise triable issues as to

26   whether Patented Plants were used as maternal plants and as to whether Defendants imported

27   and/or used seeds grown on such plants.  (ECF No. 146-1 at 12, 15.)  First, Driscoll's argues there

28   is evidence that many of the plants sampled from CBC's fields in 2019 had Driscoll's patented

1    varieties Marquis, Amesti, or Lusa in their parentage. (*Id.* at 12 (citing ECF No. 146-3 at 381,

2    490).) Second, Driscoll's argues CBC admitted in an interrogatory response that it used

3    Driscoll's patented varieties as both the male and female in each cross and the seeds from the

4    2015 and 2016 crosses were sent to the United States. (*Id.* (citing ECF No. 146-3 at 33, 34

5    ("[P]arent cultivars were used as both male and female parents")).) Third, Driscoll's argues that

6    in 2017, CBC's breeding plans explicitly called for Driscoll's plants to be used as the female

7    parent. (*Id.* at 13 (citing ECF No. 146-3 at 33, 360).) Driscoll's contends that despite CBC's

8    position that it imported those seeds to Canada, a jury could discount that position given the

9    genetic evidence of progeny in California. (*Id.*) Fourth, Driscoll's notes that Defendants

10   referenced a planned cross between Marquis and Lusa. (*Id.* (citing ECF No. 138 at 15 n.6).)

11   Driscoll's argues that if the cross between the two Patented Plants proceeded as planned, one

12   necessarily would have supplied the seeds.[8] (*Id.* (citing ECF No. 146-3 at 68 (VandenLangenberg

13   testimony discussing the planned cross between Marquis and Lusa variety)).)

14       The Court agrees with Defendants that Driscoll's fails to produce evidence that would

15   allow a reasonable jury to find by a preponderance of the evidence that a Patented Plant was used

16   as a maternal plant in any given cross, or that Defendants imported or used seeds from such a

17   cross in the United States. *See Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825, 829 (9th

18   Cir. 2001) ("To survive summary judgment, [non-moving parties] have the burden to produce

19   some evidence, other than speculation or guesswork."); *Neely v. St. Paul Fire & Marine Ins. Co.*,

20   584 F.2d 341, 346 (9th Cir. 1978) (affirming grant of summary judgment where "the evidence

21   simply fail[ed] to provide enough information from which a fair-minded juror could logically

22   ─────────────────

23   [8]      In a separate section of its opposition, Driscoll's asserts there is a triable issue as to
     whether Defendants possessed any of the Patented Plants. (ECF No. 146-1 at 14.) Driscoll's fails
24   to tie this assertion to any specific argument. In reply, Defendants dispute Driscoll's assertion.
     (ECF No. 147 at 6.) Absent meaningful argument from Driscoll's, the Court finds this factual
25   dispute is not material and the Court does not address it.

26       In addition, in a footnote, Driscoll's argues the fact that Dr. Dellaporta's genetic testing in
     2019 determined the cross labeled 116.013 did not include Lusa is not determinative of whether
27   any seeds with both Marquis and Lusa as a parent were imported by CBC in 2016. (*Id.* at n.4.)
     This argument lacks clarity, and the Court declines to address it.

28

1  infer that one explanation of the cause of the [injury] is more likely true than another").

2        Driscoll's does not dispute that the 2015 and 2016 crossing plans involved crossing

3  Patented Plants with other varieties not at issue in this case, and that those crossing plans do not

4  specify which plants were to be used as the maternal and paternal plants.  All but one of the

5  planned crosses from 2015 and 2016 involving a Patented Plant also involved another variety.

6  While it is possible a Patented Plant was used as a maternal plant at some point, Driscoll's fails to

7  persuade the Court that it can prove by a preponderance of the evidence that a Patented Plant was

8  used as the maternal plant in any given cross, or that Defendants imported or used seeds from

9  such a cross.  There was only one proposed cross — 116.013 from the 2016 crossing plan — that

10  involved a planned cross between two Patented Plants, meaning one of those Patented Plants

11  would have been the maternal plant.  However, Plaintiff fails to rebut Defendants' evidence

12  indicating that 116.013's genetic analysis revealed that the actual cross involved a Patented Plant

13  and another variety.  Even if the cross had proceeded as planned, Driscoll's fails to explain how it

14  could establish which of the two Patented Plants served as the maternal plant.  Although the 2017

15  crossing plan *did* specify which plants were to be used as maternal and paternal plants, Driscoll's

16  fails to rebut Defendants' evidence that the seeds from the 2017 crossing plan were sent to

17  Canada and germinated there — not the United States.[9]  Driscoll's vaguely argues a jury could

18  discount CBC's position given the genetic evidence of progeny in California.  (ECF No. 146-1 at

19  13.)  However, Driscoll's fails to cite any evidence that would allow the jury to arrive at that

20  conclusion other than by pure speculation.

21        The Court is unpersuaded by Driscoll's argument that there are triable issues about

22  whether Defendants imported or used seeds grown on a Patented Plant because plants sampled

23  from CBC's fields in 2019 had Patented Plant varieties in their parentage.  (ECF No. 146-1 at 12.)

24  The mere existence of progeny of Patented Plants in Defendants' fields in 2019 does not support

25  even an inference that Defendants imported and used seeds that were grown on a Patented Plant,

26  as opposed to the other variety in any given cross.  Driscoll's argument that Defendants stated in

---

[9]     As will be discussed below, Driscoll's fails to persuade the Court Defendants can be liable for allegedly infringing conduct that took place outside the United States.

1   an interrogatory response that "parent cultivars were used as both male and female parents" is

2   similarly unpersuasive.  (*Id.*)  Driscoll's fails to explain how such an admission, if true, would

3   allow a jury to find without guessing that Defendants used a Patented Plant as a maternal plant in

4   any given cross or that Defendants imported or used seeds from such a cross.  Indeed, Driscoll's

5   omits the entirety of the interrogatory response, which states,

6
> With respect to the 2015 and 2016 crosses, the seed from the multiple
> fruit was combined, and the seed parent was not recorded, and as a
7   > result, the identity of which parent bore the fruit with the seed of a
> given variety and which parent produced the pollen of a given variety
8   > is not known.  The 2017 crossing plans indicated that certain plants
> were to be used as males or females when breeding.  CBC is not
9   > aware whether [Eurosemillas] followed these plans.

10  (ECF No. 146-3 at 33.)  Lastly, Driscoll's does not address the testimony from its strawberry

11  breeding expert, Small, who testified that specifying which plants are maternal or paternal plants

12  in a strawberry cross has no material effect on the outcome of the cross.  (ECF No. 138-3 at 16.)

13          In sum, the Court concludes Driscoll's fail to produce sufficient evidence that would

14  allow the trier of fact to find, without using speculation or guesswork, that Defendants used a

15  Patented Plant as a maternal plant in any given cross or that Defendants imported or used seeds in

16  the United States resulting from such a cross.  *See Guidroz-Brault*, 254 F.3d at 829; *Neely*, 584

17  F.2d at 346.  Accordingly, Defendants' motion for summary judgment is GRANTED as to

18  Driscoll's infringement claims based on Defendants' importation and use of seeds.

19                              B.    Crossbreeding in Spain

20          Defendants next argue Driscoll's claims based on crossbreeding that occurred in Spain fail

21  for three reasons.  (ECF No. 140 at 29–32.)  First, Defendants assert United States patents do not

22  have extraterritorial reach.  (*Id.* at 29–31.)  Second, Defendants argue that without direct

23  infringement, there can be no claim for inducement of infringement under 35 U.S.C. § 271(b).

24  (*Id.* at 31.)  Third, Defendants contend they did not infringe the Plant Patents under 35 U.S.C. §

25  271(f).  (*Id.* at 31–32.)  The Court will address each argument separately.

26                              i.    *Extraterritoriality*

27          Defendants argue direct infringement under 35 U.S.C. § 271(a) requires unauthorized

28  conduct "within the United States" and the Plant Patent Act likewise limits infringement to

                                            10

1    domestic conduct.  (ECF No. 140 at 29.)  Defendants further argue it is undisputed that the

2    crossbreeding took place in Spain.  (*Id.*)  In opposition, Driscoll's does not dispute that the

3    crossbreeding took place in Spain.  Rather, Driscoll's argues Defendants controlled the

4    crossbreeding activities from the United States and sought to obtain the benefit in California.[10]

5    (ECF No. 146-1 at 16–17 (citing *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407,

6    413–14 (2018); *NTP, Inc. v. Research In Motion, Ltd*, 418 F.3d 1282, 1317 (Fed. Cir. 2005)).)

7         Both 35 U.S.C. 271(a) and the Plant Patent Act only apply to domestic conduct.  35

8    U.S.C. 271(a) (prohibiting infringing conduct that occurs "within the United States" or

9    importation "into the United States"); 35 U.S.C. § 163 (prohibiting infringing conduct that occurs

10   "throughout the United States" and importation "into the United States").  Driscoll's fails to

11   persuade the Court that those statutes apply to conduct that took place outside of the United

12   States.  Driscoll's quotes *WesternGeco* for the general proposition that "[i]f the conduct relevant

13   to the statute's focus occurred in the United States, then the case involves a permissible domestic

14   application of the statute, even if other conduct occurred abroad."  (ECF No. 146-1 at 16 (citing

15   *WesternGeco*, 585 U.S. at 414 (internal quotation marks omitted)).)  However, Driscoll's does not

16   provide meaningful analysis of *WesternGeco*, which sets forth "a two-step framework for

17   deciding questions of extraterritorality."  585 U.S. at 413.  Absent any argument from Driscoll's

18   about how *WesternGeco* applies to this case, the Court declines to discuss it.

19        Driscoll's also argues the control-and-benefit test from *NTP* applies.  (ECF No. 146-1 at

20   16–17.)  In *NTP*, the Federal Circuit discussed "where" an infringing use of a system patent

21   occurs.  418 F.3d at 1317.  The *NTP* court held "[t]he use of a claimed system under [§] 271(a) is

22   the place at which the system as a whole is put into service, i.e., the place where control of the

23   system is exercised and beneficial use of the system obtained."  *Id.*  Driscoll's cites *Corteva*

24   *Agriscience LLC v. Inari Agric., Inc.*, 743 F. Supp. 3d 603, 617 (D. Del. 2024), to support the

---

[10]    Driscoll's argues this Court previously found Driscoll's adequately alleges that CBC
engaged in "'direct infringement by exercising control over and putting' its patented varieties or
parts thereof 'into service from within the United States.'"  (ECF No. 146-1 at 16 (citing ECF No.
32 at 8).)  The Court did not previously engage in a full analysis of the arguments presented in the
instant motion and is not bound by this statement from its prior Order, which was decided at the
pleading stage.

1    proposition that the same reasoning should apply to plant patents.  (ECF No. 146-1 at 16–17.)

2    Driscoll's does not provide any analysis of *Corteva*, which does not involve the Plant Patent Act.

3    Further, *Corteva* does not appear to support Driscoll's argument, as the *Corteva* court

4    distinguished and declined to apply *NTP*, noting that *NTP* was a case "about multi-component

5    and cross-border computer systems."  743 F. Supp. 3d at 617.  Therefore, Driscoll's fails to

6    persuade the Court that Defendants can be liable for crossbreeding that took place in Spain when

7    §§ 271(a) and 163 explicitly apply only to conduct that takes place in the United States.  *See also*

8    *Regents*, 2017 WL 9531948 at *6 (granting summary judgment of non-infringement with respect

9    to CBC's breeding activities in Spain).

10        For these reasons, the Court GRANTS Defendants' motion for summary judgment as to

11    crossbreeding activities that took place in Spain.

12                        *ii.    35 U.S.C. § 271(b)*

13        35 U.S.C. § 271(b) states, "Whoever actively induces infringement of a patent shall be

14    liable as an infringer."  Defendants argue Driscoll's cannot assert a claim pursuant to § 271(b) for

15    conduct that occurred in Spain because there is no viable claim for direct infringement.  (ECF No.

16    140 at 31.)  In opposition, Driscoll's argues Defendants induced the infringing activity in Spain

17    by directing, controlling, and encouraging the infringing activity.  (ECF No. 146-1 at 18.)

18        Driscoll's does not dispute that a claim brought pursuant to § 271(b) is dependent on

19    establishing direct infringement.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S.

20    915, 922 (2014); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for

21    either active inducement of infringement or for contributory infringement is dependent upon the

22    existence of direct infringement.").  Driscoll's cites a single case, *TecSec, Inc. v. Adobe Inc.*, 978

23    F.3d 1278, 1286 (Fed. Cir. 2020), for the proposition that "[a] defendant is liable for 'induced

24    infringement under § 271(b)' if the defendant took certain affirmative acts to bring about the

25    commission by others of acts of infringement and had 'knowledge that the induced acts constitute

26    patent infringement.'"  (ECF No. 146-1 at 18.)  However, Driscoll's fails to meaningfully discuss

27    *TecSec* and how it applies to the instant case.  As discussed, there are no viable direct

28    infringement claims in this case because Defendants are entitled to summary judgment as to the

1   importation and use of seeds in the United States and as to crossbreeding that took place in Spain.

2   Therefore, the Court thus finds Defendants are entitled to summary judgment as to the § 271(b)

3   claim based on clear authority requiring a predicate direct infringement claim to bring a § 271(b)

4   claim. *See Limelight Networks*, 572 U.S. at 922.

5          Accordingly, the Court GRANTS Defendants' motion for summary judgment as to the §

6   271(b) theory of infringement.

7                              *iii.    35 U.S.C. § 271(f)*

8          Lastly, Defendants argue they are entitled to summary judgment on Driscoll's claim that

9   Defendants violated 35 U.S.C. § 271(f), which concerns exporting uncombined components of

10  patented inventions from the United States. (ECF No. 140 at 31.) Defendants argue there is no

11  evidence Defendants exported Patented Plants, or any component thereof, from the United States,

12  and § 271(f) does not apply to plant patents. (*Id.* at 32.) In opposition, Driscoll's argues

13  Defendants have not admitted where they acquired Driscoll's plants, and to the extent Driscoll's

14  plant material was supplied from the United States, such activity is covered by § 271(f). (ECF

15  No. 146-1 at 19.) Further, Driscoll's argues a court recently allowed such a claim for activities

16  involving a plant protected by a utility patent. (*Id.* (citing *Corteva*, 743 F. Supp. 3d at 618).)

17         As an initial matter, Driscoll's does not specify which subsection of § 271(f) it is

18  invoking. Defendants assert Driscoll's invokes § 271(f)(1). (ECF No. 140 at 31.) Absent

19  argument to the contrary, the Court presumes this to be correct. Section 271(f)(1) states,

20  "Whoever without authority supplies or causes to be supplied in or from the United States all or a

21  substantial portion of the components of a patented invention, where such components are

22  uncombined in whole or in part, in such manner as to actively induce the combination of such

23  components outside of the United States in a manner that would infringe the patent if such

24  combination occurred within the United States, shall be liable as an infringer."

25         Defendants correctly point out that Driscoll's cites no evidence that Defendants supplied

26  or caused to be supplied components of a patented invention "in or from the United States."

27  (ECF No. 140 at 32.) In opposition, Driscoll's hypothetically asserts, without citing any

28  evidence, that Defendants may have supplied plant material to Eurosemillas in Spain. (ECF No.

1  146-1 at 19.) Driscoll's also vaguely argues the *Corteva* court recently allowed such a claim to

2  proceed for a utility patent involving plants, but Driscoll's notes that there was evidence in

3  *Corteva* that the infringer exported seeds from the United States to Belgium. (*Id.*) Driscoll's has

4  not presented any evidence that Defendants exported any component of a Patented Plant from the

5  United States, nor does Driscoll's persuade the Court that *Corteva* has any bearing on this case.

6          Therefore, the Court GRANTS Defendants' motion for summary judgment as to the 35

7  U.S.C. § 271(f) theory of infringement.

8          **IV.    CONCLUSION**

9          For the foregoing reasons, the Court GRANTS Defendants' Motion for Summary

10  Judgment. (ECF No. 138.) The Clerk of Court is directed to enter judgment in Defendants' favor

11  as to Plaintiff's claims. The Court notes Defendants assert various counterclaims, including

12  claims for declaratory relief of non-infringement and invalidity of the patents. (*See* ECF Nos. 78,

13  79.) While it appears this Order resolves some of Defendants' counterclaims, the parties' briefing

14  is silent on this issue. Therefore, the parties are ORDERED to file a joint status report not later

15  than seven (7) days from the electronic filing date of this Order indicating how they intend to

16  proceed as to Defendants' counterclaims.

17          The Clerk of Court is further directed to file this Order under seal because it contains or

18  refers to material subject to sealing orders. Within seven (7) days of the filing date of this Order,

19  the parties shall file a stipulated proposed redacted version of this Order, redacting only those

20  portions of the Order containing or referring to material for which the Court has granted a motion

21  to seal and which the parties still request be sealed. The parties shall also email a PDF copy of

22  the proposed redacted order, without any ECF headers, to tlnorders@caed.uscourts.gov. The

23  Court will review the parties' proposal and issue a redacted version of the order.

24          IT IS SO ORDERED.

25  Date: March 25, 2025

26

27                                          TROY L. NUNLEY
                                            CHIEF UNITED STATES DISTRICT JUDGE
28